UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RAFAEL FOX, PAUL D'AURIA and JILL SHWINER,<br><br>           Plaintiffs,<br><br>    -against-<br><br>STARBUCKS CORPORATION d/b/a STARBUCKS COFFEE COMPANY,<br><br>         Defendant. | Case No. 19-CV-4650 (AJN) |

---

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS PARTIAL MOTION TO DISMISS

---

**LITTLER MENDELSON, P.C.**
A. Michael Weber
Devjani Mishra
Joseph E. Field
900 Third Avenue
New York, NY 10022
212-583-9600
Attorneys for Defendant

## TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ........................................................................................... ii

PRELIMINARY STATEMENT ...................................................................................... 1

ARGUMENT .................................................................................................................. 2

POINT I.    FOX'S NIED CLAIM IS BARRED  BY WORKERS' COMPENSATION ........ 2

POINT II.   D'AURIA AND SHWINER FAIL TO STATE A NIED CLAIM AS A
            MATTER OF NEW YORK LAW .......................................................... 5

            A.    D'Auria and Shwiner Were Not Owed A Duty of Care With
                  Respect to the Inherent Hazards of the Work They Were Engaged
                  To Perform ......................................................................... 5

            B.    Even if Starbucks Did Have a Duty of Care, It Met This Duty By
                  Publicizing the Identified Hazards and Therefore Was Not
                  "Negligent" ......................................................................... 8

            C.    D'Auria and Shwiner's NIED Claim Lacks a "Guarantee of
                  Genuineness" ...................................................................... 10

POINT III.  TO THE EXTENT THAT D'AURIA AND SHWINER'S CLAIMS ARE
            NOT DISMISSED, THEY SHOULD BE SEVERED FROM FOX'S
            REMAINING CLAIMS ......................................................................... 12

            A.    The Legal Standard for Severance ............................................. 12

            B.    Severance is Warranted Here ................................................... 13

            C.    The Claims Involve Different Transactions and Occurrences ............... 13

            D.    The Legal and Factual Questions are Different ............................. 14

            E.    Judicial Economy Would Be Served by Severance ......................... 15

            F.    Severance Would Avoid Prejudice to Defendant ........................... 15

            G.    The Claims of the AVP Employees and the Claims of Fox Involve
                  Different Witnesses and Proof ................................................. 16

CONCLUSION ............................................................................................................ 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anzelone v. ARS Nat'l Servs.*,
  2018 U.S. Dist. LEXIS 118127 (E.D.N.Y. July 16, 2018) ....................................................16

*Bedneau v. New York Hospital Medical Center of Queens*,
  841 N.Y.S.2d 689 (2d Dep't 2007) .........................................................................................7

*Boston Post Rd. Med. Imaging, P.C. v. Allstate Ins. Co.*,
  2004 U.S. Dist. LEXIS 13243 (S.D.N.Y. July 15, 2004) .....................................................15

*Brugnano v. Merrill Lynch & Co.*,
  627 N.Y.S.2d 635 (1st Dep't 1995) .......................................................................................10

*Conroy v. Inc. Vill. of Freeport*,
  43 Misc. 3d 608 (Sup. Ct. Nassau Cnty. 2014)........................................................................4

*De Rosa v. Stanley B. Michelman, P.C.*,
  584 N.Y.S.2d 202 (2d Dep't 1992) ..................................................................................10, 11

*Geller v. N. Shore Long Island Jewish Health Sys.*,
  2013 WL 5348313 (E.D.N.Y. Sept. 23, 2013) .....................................................................4, 5

*Gonzalez v. City of Schenectady*,
  2001 U.S. Dist. LEXIS 14406 (N.D.N.Y. Sept. 17, 2001) ....................................................12

*Hannah v. Wal-Mart Stores, Inc.*,
  2017 U.S. Dist. LEXIS 2046 (D. Conn. Jan. 6, 2017)...........................................................14

*Hansen v. Trustees of the Methodist Episcopal Church of Glen Cove*,
  858 N.Y.S.2d 303 (2d Dep't 2008)...........................................................................................7

*Hecht v. Kaplan*,
  645 N.Y.S.2d 51 (2nd Dep't 1996) ........................................................................................11

*Imtanios v. Goldman Sachs*,
  843 N.Y.S.2d 569 (1st Dep't 2007) ......................................................................................7, 9

*Isabella v. Hallock*,
  22 N.Y.3d 788 (2014) ..............................................................................................................3

*Jackson v. Bd. of Educ. of City of New York*,
  812 N.Y.S.2d 91 (1st Dep't 2006) ............................................................................................7

## TABLE OF AUTHORITIES
### (CONTINUED)

Page(s)

*Joye v. PSCH, Inc.*,
2016 WL 6952252 (S.D.N.Y. Nov. 28, 2016)........................................................4, 5

*Kowalsky v. Conreco Co., Inc.*,
264 N.Y. 125 (1934) ...........................................................................................7

*Kruger v. EMFT, LLC*,
87 A.D.3d 717 (2d Dep't 2011) ..............................................................................4, 5

*Lancellotti v. Howard*,
547 N.Y.S.2d 654 (2d Dep't 1989) ..........................................................................11

*Lue v. JP Morgan Chase & Co.*,
2018 U.S. Dist. LEXIS 50749 (S.D.N.Y. Mar. 27, 2018) ..............................................3, 5

*Mendez v. K&Y Peace Corp.*,
2019 U.S. Dist. LEXIS 87138 (S.D.N.Y. May 22, 2019)................................................12

*In re Merrill Lynch & Co., Inc. Research Reports Securities Litigation*,
214 F.R.D. 152 (S.D.N.Y. 2003) .............................................................................12

*State of New York v. Hendrickson Bros., Inc.*,
840 F.2d 1065 (2d Cir. 1988)................................................................................12

*Reed v. Paramount Wire Co.*,
2005 U.S. Dist. LEXIS 12308 (S.D.N.Y. June 21, 2005)................................................3

*Rojas v. 1000 42nd Street, LLC*,
72 N.Y.S.3d 568 (2d Dep't 2018).............................................................................7

*De Sesto v. Slaine*,
171 F. Supp.3d 194 (S.D.N.Y. 2016)..........................................................5, 8, 10, 11

*Stordeur v. Computer Assocs. Int'l*,
995 F. Supp. 94 (E.D.N.Y. 1998) .............................................................................3

*T.S.I. 27, Inc. v. Berman Enters., Inc.*,
115 F.R.D. 252 (S.D.N.Y. 1987) .............................................................................12

*Taggart v. Costabile*,
14 N.Y.S.3d 388 (2d Dep't 2015).............................................................................10

*Tardd v. Brookhaven Nat'l Lab.*,
2007 U.S. Dist. LEXIS 34378 (E.D.N.Y. May 8, 2007) ................................................12

## TABLE OF AUTHORITIES
### (CONTINUED)

**Page(s)**

*Vincenty v. Cincinnati, Inc.,*
    2004 NYLJ LEXIS 3549 (Sup. Ct. Bronx Cnty Aug. 14, 2004) ...............................................3

*In re Zyprexa Prods. Liab. Litig.,*
    2004 U.S. Dist. LEXIS 24541 (E.D.N.Y. Dec. 3, 2004) ........................................................14

**Statutes**

N.Y. Workers' Compensation Law 11, 29(6) .............................................................................3, 4

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) ................................................................................................................1

Fed. R. Civ. P. 21 ...............................................................................................................1, 2, 12

Starbucks submits this memorandum in support of its motion, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the first cause of action in the Complaint filed on May 21, 2019 (the "Complaint"), asserting negligent infliction of emotional distress, as a matter of law. Should the Court decline to dismiss this claim as it relates to Plaintiffs Paul D'Auria ("D'Auria") and Jill Shwiner ("Shwiner"), Starbucks moves in the alternative, pursuant to Rule 21 of the Federal Rules of Civil Procedure, to sever their claim from the remaining, unrelated claims asserted by Plaintiff Rafael Fox ("Fox").

## PRELIMINARY STATEMENT

This action centers on allegations made by Fox, a former Starbucks store manager, and D'Auria and Shwiner, two contract exterminators, concerning the use of commercially available pest control strips and pesticides at certain Starbucks stores located in Manhattan. All three Plaintiffs purport to assert claims against Starbucks for negligent infliction of emotional distress ("NIED"), relating to the use of these pest strips by unidentified persons.

However, as set forth in the Complaint, Fox was an employee of Starbucks at all times relevant to this action, and alleges that he suffered injuries in the workplace. While Starbucks denies that Fox suffered such injuries, any such harm obviously would be compensable under Starbucks' workers' compensation insurance policy. Thus, Fox's NIED claim is barred by the exclusivity provision of the New York State Workers' Compensation Law and should be dismissed as a matter of law.

Unlike Fox, D'Auria and Shwiner were employees of AVP Termite & Pest Control of New York, Inc. ("AVP"), a vendor that Starbucks hired to provide pest control services to certain of its Manhattan stores during the relevant period. As the Complaint alleges, D'Auria was a Pest Control Technician whose primary job duty was to identify, address and remedy any pest control issues at various Starbucks stores. Meanwhile Shwiner, as AVP's Director of Operations, was

responsible for providing pest control training to Starbucks employees, identifying opportunities for improvement and recommending corrective action to management. Ironically, in this action, D'Auria and Shwiner seek to hold Starbucks liable for doing a job that they were hired to do and for supposedly failing to protect them either from pests or pesticides in the course of their work as exterminators. This claim is both factually absurd and legally without merit. Given the undisputed nature of their engagement, D'Auria and Shwiner cannot show either that they were owed the requisite duty of care by Starbucks with respect to any aspect of pest control practices, that any such duty was breached, or that their NIED claim meets the required "guarantee of genuineness" under New York law. Accordingly, their NIED claim should be dismissed.

Finally, in the event that the Court does not dismiss D'Auria and Shwiner's single, tort based claim, Starbucks requests that the Court sever their claims from Fox's claims pursuant to Fed. R. Civ. P. 21. As set forth below, D'Auria and Shwiner's factual and legal claims are utterly distinct from those asserted by Fox, whose primary claims in this action relate to his own employment and the separation thereof. Given that Fox is barred from pursuing his NIED claim, the Court should separate D'Auria and Shwiner's tort claim from Fox's other, unrelated employment based claims, both for reasons of judicial economy and to avoid undue prejudice to Starbucks from combining completely disparate matters into a single action.

## ARGUMENT

### POINT I.

### FOX'S NIED CLAIM IS BARRED
### BY WORKERS' COMPENSATION

Throughout the time period relevant to this action, Fox was an employee of Starbucks. As such, he was covered for any on the job injuries through Starbucks' workers' compensation policy. Despite such coverage, Fox seeks to avoid the proper avenue for pursuing recovery for his alleged injuries and to sue Starbucks directly under a theory of negligent infliction of

emotional distress. *See* Complaint ¶ 106. Because this strategy is contrary to New York law, Fox's negligence based claim against Starbucks must be dismissed.

Sections 11 and 29(6) of the New York Workers' Compensation Law bar an employee from suing his employer for an accidental injury sustained in the course of his employment. Section 29 (6) of the Workers' Compensation Law states, in relevant part:

> The right to compensation or benefits under this chapter, shall be the ***exclusive remedy*** to an employee . . . when such employee is injured or killed by the negligence or wrong of another in the same employ . . . . The limitation of liability of an employer set forth in section eleven of this article for the injury or death of an employee shall be applicable to another in the same employ." (emphasis added)

Section 11 of the Workers' Compensation Law, which is expressly incorporated into Section 29(6), further states:

> The liability of an employer . . . ***shall be exclusive*** and in place of any other liability whatsoever, to such employee . . . or any person otherwise entitled to recover damages, contribution or indemnity, at common law or otherwise, on account of such injury or death or liability arising therefrom . . . (emphasis added)

Thus, workers' compensation law provides the express and exclusive remedy for an employee's alleged on the job injury. *See Reed v. Paramount Wire Co.,* 2005 U.S. Dist. LEXIS 12308, *6-13 (S.D.N.Y. June 21, 2005) (granting employer's motion for summary judgment based on exclusivity of workers' compensation remedy where employee sought damages for exposure to chemicals during his employment); *Stordeur v. Computer Assocs. Int'l,* 995 F. Supp. 94, 103 (E.D.N.Y. 1998); *Isabella v. Hallock,* 22 N.Y.3d 788, 792 (2014); *Vincenty v. Cincinati, Inc.,* 2004 NYLJ LEXIS 3549, *5 (Sup. Ct. Bronx Cnty Aug. 14, 2004).

Applying this statutory bar, New York courts have consistently dismissed NIED claims filed by employees against their employers. *See Lue v. JP Morgan Chase & Co.,* 2018 U.S. Dist. LEXIS 50749, *31 (S.D.N.Y. Mar. 27, 2018) ("[I]n New York, the NIED tort is governed by the Workers' Compensation Law and so Plaintiff is barred from bringing a negligence claim against

3

Chase here"); *Joye v. PSCH, Inc.*, 2016 WL 6952252, at *8 (S.D.N.Y. Nov. 28, 2016) ("Claims for negligent infliction of emotional distress against one's employer are preempted by New York's Workers' Compensation Law"); *Geller v. N. Shore Long Island Jewish Health Sys.*, 2013 WL 5348313, at *13 (E.D.N.Y. Sept. 23, 2013) ("[B]ecause the Defendants are Mrs. Geller's employer, this claim, based on negligence, is barred by New York's Workers' Compensation Law"); *Kruger v. EMFT, LLC*, 87 A.D.3d 717, 719 (2d Dep't 2011) ("The Workers' Compensation Law provides the exclusive remedy for an employee who seeks damages for unintentional injuries which he or she incurs in the course of employment"); *Conroy v. Inc. Vill. of Freeport*, 43 Misc. 3d 608, 612–13 (Sup. Ct. Nassau Cnty. 2014).

Fox affirmatively alleges that he was an "employee" under all applicable statutes, and worked for Starbucks as a Store Manager at various locations in Manhattan over a period of sixteen years. *See* Complaint, ¶¶ 4, 8.[1] As relates to Fox, the first cause of action complains that Starbucks' conduct was "negligent and grossly negligent," in that Starbucks failed to provide a safe and suitable workplace, *id.* ¶ 105, and Fox claims to have suffered "physical harm as well as extreme personal and emotional hardship" as a result. *Id.* ¶ 106.

However, as a Starbucks employee throughout the relevant period, Fox was covered by Starbucks' workers' compensation policy. Complaint ¶ 4; Weber Decl. Ex. B. This insurance policy is Fox's sole recourse for any injury, whether physical or emotional, that allegedly occurred while he was working at Starbucks. In other words, any negligence based claim that Fox could assert against Starbucks is subject to the exclusivity provisions of the Workers' Compensation Law and Starbucks' workers' compensation policy. N.Y. Workers' Compensation Law 11, 29(6). Therefore, Fox's negligence claim is barred as a matter of law

---

[1] For the Court's convenience, a true and correct copy of the Complaint is attached as Exhibit A to the accompanying Declaration of A. Michael Weber, dated July 12, 2019 ("Weber Decl.").

and should be dismissed. *Lue*, 2018 U.S. Dist. LEXIS 50749, *31; *Joye*, 2016 WL 6952252, at *8; *Geller*, 2013 WL 5348313, at *13; *Kruger*, 87 A.D.3d at 719.

## POINT II.

### D'AURIA AND SHWINER FAIL TO STATE A NIED CLAIM AS A MATTER OF NEW YORK LAW

As this Court itself has recognized, in order to state a NIED claim under New York law, a plaintiff must allege: (i) breach of a duty of care owed to him or her; (ii) an emotional injury that is "a direct, rather than a consequential, result of the breach;" and (iii) circumstances giving the claim "some guarantee of genuineness." *DeSesto v. Slaine*, 171 F. Supp.3d 194, 203 (S.D.N.Y. 2016) (citing cases). However, as set forth below, D'Auria and Shwiner cannot meet any of these required elements, because: (i) they were owed no duty of care with respect to the pest control services that they were contracted to provide; (ii) even if Starbucks had owed any duty to D'Auria and Shwiner, Starbucks followed and expressly disseminated D'Auria and Shwiner's instructions to its personnel, and thus was not "negligent" in any respect; and (iii) as individuals voluntarily working in the pest control field, D'Auria and Shwiner cannot allege that they plausibly feared for their physical safety with regard to the use of pesticides, and therefore cannot show that their NIED claim is sufficiently genuine. Therefore, this claim must be dismissed.

### A.    D'Auria and Shwiner Were Not Owed A Duty of Care With Respect to the Inherent Hazards of the Work They Were Engaged To Perform.

At the outset, D'Auria and Shwiner's NIED claim fails because Starbucks did not owe them any duty of care regarding their own provision of pest control services to Starbucks. The scope of the work that D'Auria and Shwiner performed for Starbucks included not just servicing pest control issues at the Starbucks locations, but addressing and alerting management to any problems that existed as well as actually correcting them. Thus, while Plaintiffs complain at

length that pest control strips should not have been used in Starbucks stores, it is indisputable that correcting such practices, including removing any pest strips, was part of D'Auria and Shwiner's job, and that AVP was being paid by Starbucks to address all such issues.

As noted in the Complaint, during the relevant period, both D'Auria and Shwiner were employed by AVP, which Starbucks had contracted to provide pest control services to certain of its Manhattan stores. Complaint ¶¶ 20-30. Specifically, D'Auria was "a licensed, certified Pest Control Technician" and was primarily responsible for servicing . . . more than 100 different Starbucks locations in Manhattan" and responding "to particular stores in the event of any emergent pest control challenges." *Id.* ¶¶ 16, 23-24. Shwiner was AVP's Director of Operations, and was charged with "provid[ing] periodic training to Starbucks management personnel in Manhattan regarding Integrated Pest Management ("IPM") best practices" and "accompan[ying] District Managers on walk-throughs of many Starbucks stores in Manhattan, during which she would identify maintenance and other IPM deficiencies and recommend appropriate corrective action." *Id.* ¶¶ 28-30. In other words, both D'Auria and Shwiner were responsible – and were compensated – for identifying deficient pest control practices, actually showing them to management, and ultimately correcting them.

Broadly, D'Auria and Shwiner complain that Starbucks failed to "take suitable and proper precautions to ensure [their] safety" or to "advise Plaintiffs as to the hazardous and dangerous character of the undertaking in which they were engaged," including "managing the use of hazardous pesticides." Complaint ¶ 105. Given the nature of their jobs, these assertions are nonsensical. By D'Auria and Shwiner's own account, AVP, specifically assigned them to provide pest control services to Starbucks based on their purported expertise in this area, including licensing and certification. Thus, it was D'Auria and Shwiner's responsibility to provide pest control services to Starbucks and remedy any conditions that existed. It was not

6

Starbucks' role to instruct D'Auria and Shwiner about best practices, possible hazards or risk mitigation of any kind; rather, the hazards that D'Auria and Shwiner claim they were exposed to were part and parcel of their job as licensed and certified exterminators.  It is specious for D'Auria and Shwiner to assert now, years after the fact, that Starbucks, which retained AVP for its expertise in addressing pest infestation and implementing pest control measures, somehow owed AVP's employees a duty of care with regard to any hazards entailed in such work.

While there is a general common-law duty to provide individuals with a safe place to work, New York courts have long recognized that this duty does not extend to the particular risks inherent in the type of work that a plaintiff has been specifically engaged to perform.  *See Kowalsky v. Conreco Co., Inc.*, 264 N.Y. 125, 128 (1934) ("The duty of an owner to repair implies that the workman employed to make the repair assumes the risk. . . An employee cannot recover for injuries received while doing an act to eliminate the cause of the injury."); *Rojas v. 1000 42nd Street, LLC*, 72 N.Y.S.3d 568 (2d Dep't 2018) (granting summary judgment dismissing claim by cleaning worker where "the risk of slipping on a piece of cardboard in the building's basement was inherent in the plaintiff's work"); *Hansen v. Trustees of the Methodist Episcopal Church of Glen Cove*, 858 N.Y.S.2d 303, 304 (2d Dep't 2008) ("The duty, however, does not extend to hazards that are part of, or inherent in, the very work the employee is to perform or defects the employee is hired to repair."); *Imtanios v. Goldman Sachs*, 843 N.Y.S.2d 569, 572 (1st Dep't 2007) ("[D]efendants. . . owed no duty to plaintiff to keep the floor clean so that plaintiff could perform his job to clean the premises."); *Bedneau v. New York Hospital Medical Center of Queens*, 841 N.Y.S.2d 689 (2d Dep't 2007) ("The injured plaintiff cannot recover against the defendant for common-law negligence or under Labor Law § 200, since he was injured by the condition he had undertaken to remedy.").

Starbucks retained D'Auria and Shwiner, through their employer AVP, to remedy pest infestations and provide pest management services.  As such, it was for D'Auria and Shwiner to advise and educate Starbucks regarding pest control practices, and *not* for Starbucks to provide them with "instruction in working, operating and managing the use of hazardous pesticides" as the Complaint bizarrely alleges.  Based on well-established New York law, Starbucks owed D'Auria and Shwiner no duty to provide a workplace free of the hazards associated with pest infestation or pest control, and therefore could not have breached any such duty.

**B.**	**Even if Starbucks Did Have a Duty of Care, It Met This Duty By Publicizing the Identified Hazards and Therefore Was Not "Negligent."**

Second, even if D'Auria and Shwiner could somehow allege that Starbucks owed them a duty of care with regard to their own performance of their assigned work, the record shows that Starbucks reasonably followed their instructions and therefore was not negligent.  D'Auria and Shwiner assert that in certain Starbucks stores located in Manhattan, unidentified persons deployed commercially available insecticide units called "Hot Shots" or "No-Pest Strips" and other pest control measures.  Complaint ¶¶ 36, 49.  D'Auria alleges that he documented the use of these No-Pest Strips by photographing them and emailing the photographs to Starbucks management, while Shwiner repeatedly addressed this matter with Starbucks management personnel, warning that "No-Pest Strips" should not be used in Starbucks stores because they pose a health hazard. *Id.* ¶¶ 49-51.

At the same time, D'Auria and Shwiner also *admit* that Starbucks management *relayed* their warnings to individual store personnel, including Fox and other Store Managers, by email. *Id.* ¶¶ 53-55.  The email messages sent by Starbucks management to store personnel included specific information concerning the hazards associated with No-Pest Strips, and expressly instructed store personnel not to use such devices. *Id.*  Separately, the Complaint acknowledges

8

that the Starbucks C.A.F.E. Practices Verifier and Inspector Operations Manual, a publicly available document, explicitly forbids Starbucks vendors and suppliers to use any pesticides prohibited under the World Health Organization Type 1A or 1B lists, including the active ingredient in No-Pest Strips.  Complaint ¶ 44 and n. 4.[2]

Thus, Starbucks management repeatedly and officially disclaimed the use of No-Pest Strips and warned its store managers not to use them, and also prohibited its vendors from using the underlying pesticide ingredient.  To the extent that any No-Pest Strips appeared in stores in violation of Starbucks instructions and policies, Starbucks management could not have known about such violations without being alerted to them by D'Auria and Shwiner, who were specifically retained to advise Starbucks about deficient pest management practices.

To permit this NIED claim would ignore that it was D'Auria and Shwiner's own responsibility to advise Starbucks of pest control issues, including improper pest control practices, and bring such issues to Starbucks management's attention.  Again, the Complaint alleges that D'Auria was "the Pest Control Technician primarily responsible for servicing the Starbucks account" and "responding to any emergent pest control challenges." Complaint ¶ 28. Likewise, the Complaint describes Shwiner "accompan[ying] District Managers on walk-throughs of many Starbucks stores in Manhattan, during which she would identify maintenance and other [Integrated Pest Management] deficiencies and recommend appropriate corrective action."  *Id.* ¶ 29.  Having retained AVP for its expertise and relied on it to troubleshoot and correct its pest management practices, Starbucks cannot also have been expected to protect AVP's employees from any issues or "hazards" related to their own pest control work.  *See Imtanios*, 843 N.Y.S.2d at 572 ("Such a view would lead inexorably to the absurd conclusion that defendants' duty was to hire a cleaning service to clean the premises for the cleaning

---

[2] A true and correct excerpt of this Manual is attached to the Weber Declaration as Exhibit C and is available at https://www.scsglobalservices.com/files/program_documents/CAFE_MAN_VerInsOps_V5%203_102817.pdf.

service."); *Brugnano v. Merrill Lynch & Co.,* 627 N.Y.S.2d 635, 636 (1st Dep't 1995) ("Defendants could not have provided plaintiff with a workplace that was safe from the defect that his employer was engaged to eliminate."). Ultimately, Starbucks had no reasonable way to know that its instructions were being disregarded in any given store without this problem being identified by AVP – the pest control vendor that Starbucks retained for this purpose. And, D'Auria and Shwiner admit that when they notified Starbucks of these issues, Starbucks relayed their messages to its personnel. Such admissions preclude D'Auria and Shwiner from claiming that Starbucks acted "negligently" and require dismissal of their negligence-based claim.

## C.   D'Auria and Shwiner's NIED Claim Lacks a "Guarantee of Genuineness."

Finally, D'Auria and Shwiner's NIED claim should be dismissed because it lacks the requisite "guarantee of genuineness." *Taggart v. Costabile,* 14 N.Y.S.3d 388, 396 (2d Dep't 2015). ("By requiring a direct link between the mental injury and the defendant's negligence, and by mandating some guarantee of the genuineness of the emotional injury, the Court of Appeals has recognized a standard that is effective to filter out petty and trivial complaints and to ensure that the alleged emotional distress is real."). "[T]he 'guarantee of genuineness' element can be satisfied . . . by showing that a breach of duty owed to the injured party endangered that party's physical safety or caused them to fear for their physical safety." *DeSesto,* 171 F. Supp.3d at 204 (*citing Taggart*); *De Rosa v. Stanley B. Michelman, P.C.,* 584 N.Y.S.2d 202, 203 (2d Dep't 1992).

Shwiner does not specifically allege that she feared for her safety. For his part, D'Auria may have been concerned about pesticide exposure as a general matter, but that is not enough to tie his alleged distress to any breach of duty by Starbucks, which retained AVP to perform the very work in which D'Auria and Shwiner were engaged and routinely relayed the information that they provided to Starbucks Regional, District and Store Managers. The issue is not whether

D'Auria or Shwiner felt some sort of general distress, but whether they have sufficiently alleged that *Starbucks* was bound by a duty of care and that it *inflicted* emotional distress by committing a breach that reasonably caused D'Auria and Shwiner to fear for their physical safety.  However, as set forth above, Starbucks did not owe D'Auria and Shwiner any duty of care with regard to the hazards of their assigned work, pest control.  Further, Starbucks endorsed and relayed D'Auria and Shwiner's instructions to its personnel and expressly prohibited the use of pest strips; as such, Starbucks cannot reasonably be found to have committed any negligence that may be specifically tied to any fear of injury.  And, D'Auria and Shwiner continued to provide services to Starbucks for years, suggesting they were not genuinely afraid of physical harm. While D'Auria and Shwiner may have been cautious about working with pesticides, that reasonable caution is a function of their voluntary choice to work as exterminators, and not tied to any acts or omissions by Starbucks.  Because D'Auria and Shwiner's NIED claim does not link any breach by Starbucks to any plausible fear of physical injury, it lacks the required genuineness and should be dismissed on this basis as well. *See DeSesto*, 171 F. Supp.3d at 204 (dismissing NIED counterclaims where plaintiff "failed to allege any threat to or fear for her personal safety" and did not "point to any type of negligent behavior recognized by New York courts as creating compensable emotional distress"); *Hecht v. Kaplan*, 645 N.Y.S.2d 51, 54 (2d Dep't 1996) (dismissing NIED claim where plaintiff "[sought] to recover solely for emotional harm, unaccompanied by any form of physical trauma, and [did] not allege[] any physical harm"); *De Rosa*, 584 N.Y.S. at 203 (dismissing NIED claim where there was no allegation of conduct that unreasonably endangered plaintiffs' physical safety); *Lancellotti v. Howard*, 547 N.Y.S.2d 654 (2d Dep't 1989) (dismissing NIED claim based "solely on emotional harm unaccompanied by any form of physical trauma").

## POINT III.

## TO THE EXTENT THAT D'AURIA AND SHWINER'S CLAIMS ARE NOT DISMISSED, THEY SHOULD BE SEVERED FROM FOX'S REMAINING CLAIMS

As discussed above, D'Auria and Shwiner's NIED claim should be dismissed as a matter of law.  However, to the extent that these claims survive the instant motion to dismiss (and they should not), at the very least, they should be severed from Fox's wholly unrelated claims against Starbucks.

### A.    The Legal Standard for Severance

Rule 21 of the Federal Rules of Civil Procedure provides, *inter alia*, that a court has the power to "sever any claim against a party." Fed. R. Civ. P. 21.  The Court "has broad discretion to sever claims and parties, so long as in doing so the Court furthers the aims of justice, promotes judicial economy and efficiency, and avoids prejudicing the rights of any party." *In re Merrill Lynch & Co., Inc. Research Reports Securities Litigation*, 214 F.R.D. 152, 155 (S.D.N.Y. 2003); *see also T.S.I. 27, Inc. v. Berman Enters., Inc.*, 115 F.R.D. 252, 254 (S.D.N.Y. 1987).  "The decision of whether to grant a severance motion is committed to the sound discretion of the trial court." *New York v. Hendrickson Bros, Inc.*, 840 F.2d 1065, 1082 (2d Cir. 1988).

In deciding whether severance pursuant to Rule 21 is appropriate, courts generally consider the following factors:

> (1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims involve common questions of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) whether prejudice would be avoided by severance; and (5) whether different witnesses and documentary proof is required for the claims.

*Mendez v. K&Y Peace Corp.*, 2019 U.S. Dist. LEXIS 87138, *8 (S.D.N.Y. 2019).  Satisfaction of any one of these conditions will justify severance.  *Tardd v. Brookhaven Nat'l Lab.*, 2007 U.S. Dist. LEXIS 34378, *18 (E.D.N.Y. May 8, 2007); *Gonzalez v. City of Schenectady,* 2001 U.S.

Dist. LEXIS 14406, *31 (N.D.N.Y. Sept. 17, 2001) ("[t]o grant severance or separate trials requires the presence of only one of these conditions").

**B.    Severance is Warranted Here**

Under the circumstances of this case, the recognized factors strongly support the conclusion that, to the extent that D'Auria and Shwiner's NIED claim survives dismissal, it should be severed and resolved separately from Fox's claims.

This case involves two separate sets of factual circumstances and legal theories. First, there is the NIED claim by D'Auria and Shwiner as outside contractors of Starbucks. Second, there are the employment based whistleblower retaliation claims by Fox as a former Starbucks employee. Combining these distinct factual and legal claims in one lawsuit not only results in confusion, but also will cause unfair prejudice to Starbucks. As further explained below, each of the factors applicable to a severance analysis weigh in favor of severing these claims.

**C.    The Claims Involve Different**
**Transactions and Occurrences**

D'Auria and Shwiner were involved in different transactions and occurrences than those involving Fox. The D'Auria and Shwiner transactions involve the pest control services that they provided to Starbucks through AVP, their employer. Complaint ¶¶ 5-6, 19-30. Their claim (to the extent it survives the instant motion to dismiss) is based on their alleged exposure to "hazardous pesticides" while performing pest control services at Starbucks locations throughout Manhattan. *Id.*, ¶¶ 34, 45-46, 75-80, 105-107.

In contrast, Fox's claims are based on his alleged whistleblowing activity as a Starbucks Store Manager. This consists of "reporting" the use of pest strips at three Starbucks locations and purported federal and state wage violations which Fox alleges resulted in the retaliatory termination of his employment at Starbucks. *Id.*, ¶¶ 70, 74, 87-103, 109-115, 117-120, 122-126.

The respective claims in this action are based on different transactions.  The first set of transactions involve D'Auria and Shwiner and relate to their alleged working conditions and claimed exposure to pesticides.  The second set of transactions involve Fox and relate to his alleged whistleblowing activities.  As stated in Point I, *supra*, Fox is barred from pursuing tort claims related to any pesticide exposure.  These differences in the fundamental basis of the claims weigh in favor of severing D'Auria and Shwiner's claims from Fox's.

**D.      The Legal and Factual Questions are Different**

D'Auria and Shwiner's claim on one hand, and Fox's claims on the other, are clearly different.  Essentially, the first set of allegations purports to be a toxic tort case while the second is an employment retaliation case.

The only cause of action asserted by the former AVP employees is a New York common law NIED claim.  That claim seeks damages arising from D'Auria and Shwiner's alleged exposure to "hazardous pesticides" during their provision of pest control services to Starbucks.  Complaint ¶¶ 105, 106.  In contrast, Fox seeks damages consisting of lost past and future income, liquidated damages and emotional distress for alleged whistleblower violations under the New York Labor Law and the Fair Labor Standards Act.  *Id.*, ¶¶ 108-126.

As a result, the legal and factual elements of liability and defenses relating to the respective claims will be quite different.  These differences also weigh in favor of severing the claims.  *Hannah v. Wal-Mart Stores, Inc.,* 2017 U.S. Dist. LEXIS 2046, *10-11 (D. Conn. Jan. 6, 2017) (although claims have some common factual overlap, because they involved different legal claims, bifurcation was proper); *In re Zyprexa Prods. Liab. Litig.,* 2004 U.S. Dist. LEXIS 24541, *13-14 (E.D.N.Y. Dec. 3, 2004) (plaintiff's claims for constitutional violations were severed from her product liability claims which involved different legal questions and burdens).

**E.**     **Judicial Economy Would Be Served by Severance**

Severing the claims and parties also would serve to promote the interests of judicial economy.  Plaintiffs have lumped together in one lawsuit two distinct and different claims.  Culling out the former AVP employees' tort claim from Fox's employment-based claims would foster judicial economy by yielding more streamlined litigation that could be resolved more expeditiously.  It would unnecessarily complicate the litigation involving Fox if his claims were tied into the alleged toxic exposure claims asserted by D'Auria and Shwiner.

Ordering severance in this case would benefit both the parties and the Court.  Therefore, the motion to sever should be granted.  See *Boston Post Rd. Med. Imaging, P.C. v. Allstate Ins. Co.*, 2004 U.S. Dist. LEXIS 13243,*6 (S.D.N.Y. July 15, 2004) (granting motion to sever to promote judicial economy where, inter alia, trying all of the claims together would be unwieldy).

**F.**     **Severance Would Avoid Prejudice to Defendant**

For the same reasons that judicial economy would be promoted by ordering severance, severing the claims and parties would avoid unfair prejudice to Starbucks here.

If the Court allows these claims to be litigated and tried together, it would unfairly prejudice Starbucks in its defense of Fox's whistleblower claims.  Both the pretrial proceedings as well as the ultimate trial would likely focus on the alleged harmful effects of exposure to "pest strips and other hazardous pesticides" that D'Auria and Shwiner allege Starbucks used.  No doubt, D'Auria and Shwiner will highlight the inflammatory photographs attached to the Complaint allegedly showing dangerous conditions at certain Starbucks stores.  Presumably, discovery on D'Auria and Shwiner's NIED claim, as well as the trial, will focus on the alleged adverse health effects from exposure to the pest strips and chemicals.  This will have negative repercussions for Starbucks and divert the focus from the employment related issues involved in Fox's claims against Starbucks, which have nothing to do with pesticide use or the risks of

pesticide exposure. This potential for prejudice also warrants severance. *Anzelone v. ARS Nat'l Servs.*, 2018 U.S. Dist. LEXIS 118127, *16 (E.D.N.Y. July 16, 2018) (granting motion to sever where multiple plaintiffs had similar but factually different claims against the defendant and "the Defendant would likely be prejudiced if it had to defend against both Plaintiffs' claims at a single trial").

G.  **The Claims of the AVP Employees and the Claims of Fox Involve Different Witnesses and Proof**

Finally, the respective claims, by their very nature, will involve different witnesses and different proof. The proof related to D'Auria and Shwiner's allegation that Starbucks negligently exposed them to dangerous products and chemicals will, to a great extent, involve the testimony of expert witnesses.

In contrast, Fox's whistleblower claims do not require such scientific testimony. Neither side will need to engage experts to prove or deny liability. Fox's claims also do not require addressing D'Auria or Shwiner's physical or emotional condition in any respect. The witnesses relevant to Fox's whistleblower claims consist of the members of Starbucks management to whom Fox alleges that he complained. Starbucks' witnesses also will address the basis for Fox's termination and show that what motivated them had nothing to do with Fox's alleged whistleblower status. Therefore, once again, this factor supports severance.

## CONCLUSION

For all of the foregoing reasons, Starbucks respectfully requests that the Court grant its motion and: (i) dismiss Fox's NIED as barred by the Workers' Compensation Law; (ii) dismiss D'Auria and Shwiner's NIED claim based on a failure to state a cause of action; and, (iii) if the Court does not dismiss D'Auria and Shwiner's claim, in the alternative, sever that claim from Fox's unrelated claims.

Dated:  New York, New York        **LITTLER MENDELSON, P.C.**
       July 12, 2019

                                         By:   */s/ A. Michael Weber*
                                           A. Michael Weber
                                           Devjani H. Mishra
                                           Joseph E. Field
                                     900 Third Avenue
                                       New York, NY  10022
                                       (212) 583-9600
                                       Attorneys for Defendant