UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RAFAEL FOX, PAUL D'AURIA and JILL SHWINER,<br><br>                  Plaintiffs,<br><br>        -against-<br><br>STARBUCKS CORPORATION d/b/a STARBUCKS COFFEE COMPANY,<br><br>                  Defendant. | Case No. 19-CV-4650 (AJN) |

## DEFENDANT'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS PARTIAL MOTION TO DISMISS

                                                        **LITTLER MENDELSON, P.C.**
                                                        A. Michael Weber
                                                         Devjani Mishra
                                                         Joseph E. Field
                                                         900 Third Avenue
                                                         New York, NY 10022
                                                         212-583-9600
                                                         Attorneys for Defendant

**TABLE OF CONTENTS**

**PAGE**

ARGUMENT ................................................................................................................................. 1

    I.    FOX HAS ABANDONED HIS NIED CLAIM ..................................................... 1

    II.    D'AURIA AND SHWINER'S NIED CLAIM SHOULD BE DISMISSED ........ 2

        A.    D'Auria and Shwiner Were Not Owed a Duty of Care ............................. 2

        B.    Starbucks Met Any Obligations That It Had ............................................. 3

        C.    D'Auria and Shwiner's Claim Lacks a Guarantee of Genuineness ........... 5

    III.    SEVERANCE SHOULD BE ORDERED IF THE NIED CLAIMS
SURVIVE THIS MOTION ................................................................................. 6

        A.    The Claims are Factually Distinct .............................................................. 6

        B.    The Legal Claims are Completely Distinct ............................................... 8

        C.    There Will Be Little Overlap for Discovery and Trial .............................. 9

        D.    Starbucks Will Be Prejudiced if the Claims are Not Severed .................... 9

CONCLUSION ............................................................................................................................ 10

i

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Avillan v. Donahoe*,
  2015 U.S. Dist. LEXIS 20050 (S.D.N.Y. Feb. 19, 2015) ........................................................... 2

*Costello v. Home Depot U.S.A., Inc.*,
  888 F. Supp. 2d 258 (D. Conn. 2012) ...................................................................................... 10

*De Sesto v. Slaine*,
  171 F. Supp. 3d 194 (S.D.N.Y. 1996) .................................................................................... 5, 8

*Felske v. Hirschmann*,
  2012 U.S. Dist. LEXIS 29893 (S.D.N.Y. Mar. 1, 2012) ........................................................... 2

*Imtanios v. Goldman Sachs*,
  843 N.Y.S.2d 569 (1st Dep't 2007) ........................................................................................... 3

*Ismail v. Cohen*,
  706 F. Supp. 243 (S.D.N.Y. 1989) .......................................................................................... 10

*Kennedy v. McKesson Co.*,
  462 N.Y.S.2d 421 (N.Y. 1983) .................................................................................................. 6

*Perez v. G & P Auto Wash, Inc.*,
  930 F. Supp. 2d 423 (E.D.N.Y. 2013) ....................................................................................... 8

*Santucci v. Veneman*,
  2002 U.S. Dist. LEXIS 19032 (S.D.N.Y. Oct. 8, 2002) ............................................................ 8

*Sharkey v. JP Morgan Chase & Co.*,
  2011 U.S. Dist. LEXIS 92953 (S.D.N.Y. Aug. 19, 2011) ......................................................... 8

*Taggart v. Costabile*,
  14 N.Y.S.3d 388 (2d Dep't 2015) .......................................................................................... 5, 6

Starbucks submits this reply memorandum in further support of its partial motion to dismiss the first cause of action in the Complaint or, alternatively, to sever that claim from Fox's unrelated claims. The terms defined in Starbucks' moving brief, dated July 12, 2019 ("Moving Br.") are incorporated by reference herein.

Starbucks' motion presents a simple question: Can two professional exterminators, who were retained to provide pest control services, pursue a claim that being exposed to pesticides in the course of those services caused them to suffer emotional distress? Based on long-settled New York law, the answer should be no. The Complaint concedes that D'Auria and Shwiner were contracted to advise Starbucks regarding proper pest management practices and troubleshoot issues that they identified in Starbucks stores. Even if Starbucks somehow owed either D'Auria or Shwiner a duty of care with regard to this work, Starbucks met this duty by relaying D'Auria and Shwiner's instructions to its personnel and informing them that the pesticides at issue were not to be used. Their NIED claim lacks the requisite "guarantee of genuineness," and therefore should be dismissed.

Should the Court permit the NIED claim to proceed nonetheless, Starbucks respectfully submit that it should be severed from the balance of the claims in this action. Now that Fox has abandoned his NIED claim, there is no factual or legal nexus linking the remaining claims, and Starbucks would be severely prejudiced if these claims were to be commingled in a single action. Accordingly, Starbucks requests that this Court sever the claims for separate proceedings.

## ARGUMENT

### I.   FOX HAS ABANDONED HIS NIED CLAIM

As set forth in Starbucks' moving brief, Fox was a Starbucks employee and covered under the Company's workers' compensation policy. Pursuant to the exclusivity provisions of New York Workers' Compensation Law, Fox cannot sue Starbucks for negligent infliction of

1

emotional distress. Thus, Fox has no grounds to assert such a claim (as he did) in the first cause of action of the Complaint.

Fox does not even challenge the dismissal of his NIED claim; indeed, footnote 1 of the Plaintiffs' opposition brief ("Pl. Br.") concedes that Plaintiffs are not opposing this portion of Starbucks' motion. As such, Fox has abandoned his NIED claim and it should be dismissed. *See Avillan v. Donahoe,* 2015 U.S. Dist. LEXIS 20050, at *19 (S.D.N.Y. Feb. 19, 2015); *Felske v. Hirschmann,* 2012 U.S. Dist. LEXIS 29893, at *9 (S.D.N.Y. Mar. 1, 2012).

## II. D'AURIA AND SHWINER'S NIED CLAIM SHOULD BE DISMISSED

As set forth in Starbucks' moving papers, D'Auria and Shwiner cannot pursue an NIED claim with regard to their alleged exposure to pesticides, because any such exposure was squarely within the services they were retained to provide, and Starbucks did not owe them a duty of care that would support a negligence claim. Even if a duty of care could be inferred, Starbucks management met its obligations by disavowing the use of toxic chemicals and by relaying D'Auria and Shwiner's instructions to its personnel, including Fox himself. Finally, D'Auria and Shwiner's claim does not possess the requisite guarantee of genuineness to make out an NIED claim.

### A. D'Auria and Shwiner Were Not Owed a Duty of Care.

It is well-established under New York law that a duty of care does not extend to the particular risks inherent in the type of work that a plaintiff has been specifically engaged to perform. (Moving Br. 7-8). In the absence of a cognizable duty of care, D'Auria and Shwiner cannot advance a "negligence" claim and their NIED claim accordingly should be dismissed.

Plaintiffs concede that both D'Auria and Shwiner were experienced pest control professionals with many years of experience, and thus would have had far more specific expertise than any Starbucks employee with respect to pest management practices. Further, they

admit that Starbucks management specifically engaged AVP to provide Starbucks with advice and training regarding appropriate pest management practices and that their own roles included such work. (Complaint ¶¶ 20, 22, 28-29; Pl. Br. at 11). While Plaintiffs wildly speculate that "Starbucks management" simultaneously "engaged in negligent conduct systematically" by using other pest control measures in its stores (Pl. Br. at 13), the Complaint contains no colorable basis to attribute such acts to "Starbucks management" or to any specific Starbucks manager.

It is utterly illogical to believe that Starbucks would contract with AVP to provide pest control services, and then turn around and "self-deploy" its own pesticides.  It is likewise frivolous to believe either that Starbucks should have trained D'Auria and Shwiner, who were experienced professionals, in how to perform their jobs safely (Complaint ¶ 105), or that it should have employed other resources aside from AVP to search out and address the possible presence of unapproved pesticides in advance of AVP's pest control visits. *Imtanios v. Goldman Sachs*, 843 N.Y.S.2d 569, 572 (1st Dep't 2007) ("[D]efendants owed no duty to plaintiff to keep the floor clean so that the plaintiff could perform his job to clean the premises."). Ultimately, it is evident that Starbucks relied on D'Auria and Shwiner's professional expertise and judgment to identify and correct any possibly improper practices, and that Plaintiffs now seek to profit from the information they acquired through the scope of their services as well as their own arguable failure to do their jobs. However, their NIED claim founders on the fact that Starbucks owed them no duty with regard to the risks inherent in their work.

### B. Starbucks Met Any Obligations That It Had

To the extent that Starbucks did indeed have any obligations to D'Auria and Shwiner notwithstanding the nature of their retention, it amply met these obligations both by explicitly disavowing the use of unapproved "No-Pest Strips" and by relaying D'Auria and Shwiner's instructions to its personnel. (Moving Br. at 8-10).

3

Again, Plaintiffs attempt to distract the Court by spinning out a wide-ranging, fantastical scheme involving unnamed members of "Starbucks management" who supposedly and "systematically hid" toxic chemicals throughout Starbucks locations in New York. However, Plaintiffs fail to allege any colorable connection between Starbucks management and the pest control devices that D'Auria and Shwiner encountered in the scope of their services, beyond Plaintiffs' own conjecture and surmise. Rather, with regard to the NIED claim, the Complaint contains only the following discrete allegations regarding any member of Starbucks "management:"

(i)   Starbucks contracted with AVP to provide pest control and pest management services, and specifically looked to AVP to train and advise Starbucks personnel regarding both (Complaint ¶¶ 20, 22, 28-29);

(ii)  Starbucks classified the active ingredient in No-Pest strips as highly hazardous and not to be used (*id.* ¶ 44);

(iii) Starbucks District Management forwarded AVP's warnings concerning No-Pest strips to its Store Managers, including Fox, including explicit directions not to use such devices in stores (*id.* ¶¶ 53-54);

(iv)  In late 2017, Fox reported finding No-Pest strips to his then-District Manager, who responded by stating that he would investigate the matter (*id.* ¶¶ 60-61).

(v)   In October 2017, a Starbucks Regional Quality Assurance Manager acknowledged "the importance of breaking this habit" of using unapproved pest-control devices (*id.* ¶ 58).

With regard to the last allegation, both the Complaint and Plaintiffs' opposition papers grossly misstate the facts. In the email that Plaintiffs purport to cite, the Starbucks Regional Quality Assurance Manager actually wrote to Shwiner: "I sent out the email to all the last time you asked, and I mentioned it during my leadership presentation to Ross and the [Regional Directors] just last week. I can have another talk with the team and *stress the importance of*

*breaking this habit*" (emphasis added).[1]  Plaintiffs' assertion that this statement shows that Starbucks "was simply unwilling to internalize 'the importance of breaking this habit'" (Pl. Br. at 13) is flatly false and should be disregarded.

Ultimately, Plaintiffs' admissions are fatal to any notion that Starbucks acted negligently. According to the Complaint itself, Starbucks management retained experienced pest control professionals on whom it relied to identify and correct any problematic practices, relayed their advice to its personnel and explicitly disapproved the use of other pest control measures.  While Plaintiffs strain mightily to depict a long-running corporate conspiracy, their efforts are wholly founded on untraceable hearsay and self-serving "presumptions."  The Court should dismiss the NIED claim on this basis as well.

### C. D'Auria and Shwiner's Claim Lacks a Guarantee of Genuineness.

Finally, as set forth in Starbucks' moving papers, D'Auria and Shwiner's claim does not possess the requisite "guarantee of genuineness," which this Court has recognized is a prerequisite for an NIED claim.  *De Sesto v. Slaine*, 171 F. Supp. 3d 194, 204 (S.D.N.Y. 1996) (dismissing NIED counterclaims); *Taggart v. Costabile*, 14 N.Y.S.3d 388, 396 (2d Dep't 2015) (observing that by requiring genuineness, "the Court of Appeals has recognized a standard that is effective to filter out petty and trivial complaints and to ensure that the alleged emotional distress is real.").  *See* Moving Br. at 10-11 (citing additional cases).

D'Auria and Shwiner do not respond meaningfully to this argument, but merely restate that the pesticides at issue were toxic, that each of them discussed pesticides with Starbucks and that D'Auria had previously contracted lymphoma from other work. (Pl. Br. at 14-15).  Again, whatever their prior experience, both D'Auria and Shwiner voluntarily chose to work as exterminators, which inherently entails working with pesticides, and worked with Starbucks

---

[1] For the Court's convenience, a true and correct copy of this email is attached to the accompanying Reply Declaration of A. Michael Weber as Exhibit A.

(through AVP) over a period of years.  Their general caution about pesticide exposure was a necessary outgrowth of their chosen profession, *not a direct result of* any specific aspect of their work for Starbucks.  *See Taggart*, 14 N.Y.S.3d at 398 (dismissing NIED claim where plaintiffs "failed to adequately allege facts that would establish that the mental injury was 'a direct, rather than a consequential, result of the breach.'"), *citing Kennedy v. McKesson Co.*, 462 N.Y.S.2d 421, 424 (N.Y. 1983).  Because they cannot genuinely link any plausible fear of physical injury to any act by Starbucks, D'Auria and Shwiner's NIED claim should be dismissed.

### III. SEVERANCE SHOULD BE ORDERED IF THE NIED CLAIMS SURVIVE THIS MOTION

In the event that D'Auria's and Shwiner's NIED claims survive dismissal, the Court should order severance of their claims from Fox's claims, because they are factually and legally distinct.  Contrary to Plaintiffs' arguments in opposition, the negligence claims of the outside contractors are not tied to the employment retaliation claims of a former Starbucks employee. Moreover, Starbucks would be unfairly prejudiced by having these distinct claims conflated and heard in a single case.

#### A. The Claims are Factually Distinct

At the outset, Fox fails to acknowledge that most of his claims are completely separate from the claims of the former AVP employees.  To wit, in both the third and fourth causes of action in the Complaint, Fox alleges that he was fired for complaining about Starbucks' "improper payroll practices." (Complaint ¶¶ 87-103, 108-126.)  These allegations relate to Fox's claim that he uncovered evidence of purported time card manipulation and underreporting of wages at the West Broadway Starbucks location where he worked.  (*Id.* ¶¶ 87-92.)  Fox claims that he disclosed this issue to his District Manager and that, because of such disclosure, Starbucks terminated his employment.  (*Id.* ¶¶ 93-103.)  These allegations form the basis for Fox's whistleblower retaliation claims under both the NYLL and the FLSA.  (*Id.* ¶¶ 116-126.)

6

However, these wage and hour claims have nothing to do with the alleged facts or legal theories upon which the NIED claims are based.

Although, in the second cause of action in the Complaint, Fox also asserts a retaliation claim nominally relating to pest strips, this claim is fundamentally different from the claim being asserted by the other plaintiffs. D'Auria's and Shwiner's claims are based on their allegations that they were repeatedly exposed to the pest strips and pesticides. (Complaint ¶¶ 104-107.) By contrast, Fox does not make such allegations; unlike D'Auria and Shwiner, Fox does not claim that he was exposed to allegedly toxic pesticides in any form. (*Id.* ¶¶ 75-80.)

In addition, the nature and extent of each Plaintiff's alleged complaints to Starbucks are markedly different. D'Auria and Shwiner allege that they submitted written warnings regarding the use of pest strips to Starbucks Regional and District Managers over a three year period starting in 2015. (Complaint ¶¶ 47-57.) In contrast, Fox did not "report" the use of pest strips anyone until January 31, 2018, when he allegedly discussed it with a representative of Starbucks Human Resources. (*Id.* ¶ 65.) Further, Fox's "report" was not based on his personal observation or experience, but, rather, involved relaying the statement of an unidentified co-worker who was working at one of Fox's prior stores. (Complaint ¶¶ 63-64.) Indeed, Fox claims that Starbucks fired him before he "could escalate an urgent complaint to higher management" related to the pest strips. (*Id.* ¶¶ 68-69.)

Based on the allegations in the Complaint, it is clear that the facts asserted by D'Auria and Shwiner have little in common with those asserted by Fox. Therefore, the distinct factual allegations underlying these claims weigh in favor of severance.

### B. The Legal Claims are Completely Distinct

The tort claims of the former AVP employees are based on the alleged emotional harm they claim to have suffered from exposure to toxic chemicals. By contrast, Fox's whistleblower claim is based on his assertion that he was fired for engaging in protected activity.

For D'Auria and Shwiner to establish their NIED claims they must establish: (i) that the defendant breached a duty of care owing to the plaintiff; (ii) an emotional injury that is a direct result of the breach; and (iii) circumstances giving the claim "some guarantee of genuineness." *De Sesto*, 171 F. Supp. 3d at 203. Due to the nature of this claim, D'Auria and Shwiner will be required to establish not only the breach of a legal duty owed by Starbucks, but also a genuine emotional injury caused by the alleged breach. Thus, the proof required for D'Auria and Shwiner will focus on the nature of AVP's relationship with Starbucks, the work that AVP was retained to performed, the scope of any duty owed to these former AVP employees, the nature and "genuineness" of their emotional and/or physical injury and their ability to establish a causal connection.

Fox's whistleblower retaliation claims are quite different from the NIED claims asserted by D'Auria and Shwiner. The key element in any employee whistleblower claim is that the plaintiff-employee has engaged in a protected activity that triggers an adverse action by the employer, such as the termination of the plaintiff's employment. *Perez v. G & P Auto Wash, Inc.,* 930 F. Supp. 2d 423, 436 (E.D.N.Y. 2013). The plaintiff must establish he has a reasonable belief that the employer has committed a violation of law. *Sharkey v. JP Morgan Chase & Co.,* 2011 U.S. Dist. LEXIS 92953, at *55 (S.D.N.Y. Aug. 19, 2011); *Santucci v. Veneman,* 2002 U.S. Dist. LEXIS 19032, at *10 (S.D.N.Y. Oct. 8, 2002).

8

Because the nature of the legal claims asserted here illustrate that the claims asserted by D'Auria and Shwiner and those asserted by Fox are quite different, this factor also weighs in favor of severance.

### C. There Will Be Little Overlap for Discovery and Trial

Given the distinct nature of the factual allegations and the legal claims involved here, there will be little overlap of the evidence relevant to establish and defend against the respective Plaintiffs' claims.

In seeking to establish their NIED claim, D'Auria and Shwiner will seek to obtain and introduce evidence regarding the alleged use of pest strips in various Starbucks locations over a period of three years, their alleged oral and written complaints to Starbucks, the potential health effects from their alleged exposure and their alleged emotional damages from the exposure. In comparison, Fox's claim concerns only his alleged complaint to Starbucks about the possible use of pest strips in January 2018, based on information supposedly given to him by an unknown person, shortly before his termination. There is no need, as Fox incorrectly alleges, for him to establish a "systematic misuse of DDVP and other pesticides" (Pl. Br. p. 18). In essence, Fox seeks to retroactively bolster his whistleblower claims by relying on information that he was not even aware of at the time of his "report". Because there is little overlap between his claims and D'Auria and Shwiner's NIED claim, this factor again weighs in favor of severance.

### D. Starbucks Will Be Prejudiced if the Claims are Not Severed

Discovery addressed to the potential health effects of pest strips in connection with D'Auria's and Shwiner's NIED claim has no bearing on the issue in Fox's case regarding his status as an alleged employee whistleblower. Allowing both sets of claims to be tried together would be unduly prejudicial to Starbucks.

9

Judging from their papers, Plaintiffs clearly intend to confuse matters by using the alleged effects of pesticide exposure, as well as the unsavory details around pest control in general, to bolster Fox's whistleblower claim, even though these issues are totally irrelevant to Fox's allegation that he was terminated for engaging in protected activity.  Given the lack of any factual or legal connection between the claims, it would unfairly prejudice Starbucks to litigate and try these cases together.  *Ismail v. Cohen,* 706 F. Supp. 243, 251 (S.D.N.Y. 1989) (bifurcation is appropriate to avoid prejudice where the jury may have difficulty compartmentalizing evidence on a particular claim).[2] The real danger of unfair prejudice to Starbucks provides a final reason for granting the motion to sever.

## CONCLUSION

For all of the foregoing reasons, Starbucks respectfully requests that the Court grant its partial motion to dismiss the NIED claims or, alternatively, sever D'Auria's and Shwiner's claims from Fox's unrelated claims.

Dated:  New York, New York  
        August 12, 2019

**LITTLER MENDELSON, P.C.**

By: */s/ A. Michael Weber*  
    A. Michael Weber  
    Devjani H. Mishra  
    Joseph E. Field  
900 Third Avenue  
New York, NY  10022  
(212) 583-9600  
Attorneys for Defendant

---

[2] Plaintiff's argument that any prejudice to Starbucks can be remedied by carefully drafted jury instructions (Pl. Brief p. 20) is incorrect and should be rejected.  *Costello v. Home Depot U.S.A., Inc.*, 888 F. Supp. 2d 258, 265 (D. Conn. 2012) (granting motion to sever finding that individualized evidence regarding the various plaintiffs could lead to jury confusion even with clearly drafted jury instructions).