USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: MAR 0 2 2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

Rafael Fox, *et al.*,

                Plaintiffs,

–v–

Starbucks Corporation,

                Defendant.

19-CV-4650 (AJN)

MEMORANDUM AND ORDER

---

ALISON J. NATHAN, District Judge:

    Plaintiff Rafael Fox brings this action against his former employer, Defendant Starbucks for negligent infliction of emotional distress related to alleged exposure to toxic pesticides. He also brings claims under the Fair Labor Standard Act ("FLSA") and New York Labor Law ("NYLL") alleging that he was terminated in retaliation for complaining about pesticide use and the underpayment of Starbucks workers. Plaintiffs Paul D'Auria and Jill Shwiner were pest control contractors who serviced Starbucks locations. They too bring negligent infliction of emotional distress claims based on allegations of repeated exposure to toxic pesticides. Before the Court is Defendant's motion to dismiss the negligent infliction of emotional distress causes of action for failure to state a claim and, in the alternative, to sever D'Auria's and Shwiner's claims from Fox's. Dkt. No. 14. For the reasons articulated below, Defendant's motion to dismiss is granted in part and denied in part. Its motion to sever is denied with leave to renew.

## I. BACKGROUND

    The following facts are drawn from the Complaint and assumed to be true for purposes of this motion to dismiss.

Plaintiffs Paul D'Auria and Jill Shwiner were employees of AVP Termite & Pest Control of New York, Inc. ("AVP"), which is described as a "pest management control services provider." Complaint ("Compl."), Dkt. No. 1, ¶¶ 19, 21, 26. Starbucks in turn contracted with AVP to service most of its Manhattan locations. *Id.* ¶ 22. The Complaint states that from 2013 on, D'Auria was the "Pest Control Technician primarily responsible for servicing the Starbucks account." *Id.* ¶ 23. His duties are described as "provid[ing] routine regularly scheduled services" to Starbucks stores and "respond[ing], on an urgent basis, to particular stores in the event of any emergent pest control challenges." *Id.* ¶ 24. Shwiner was alleged to have been the "Director of Operations" for AVP. *Id.* ¶ 26. Her Starbucks specific duties are alleged to have included "providing periodic training to Starbucks management personnel regarding Integrated Pest Management ('IPM') best practices." *Id.* ¶ 28. She also is alleged to have "accompanied District Managers on walk-throughs of many Starbucks stores in Manhattan, during which she would identify maintenance and other IPM deficiencies and recommend appropriate corrective action." *Id.* ¶ 29. The Complaint also states that on occasion, Shwiner "personally . . . addressed emergent pest control matters in particular Starbucks stores." *Id.* ¶ 30.

While servicing Starbucks locations, D'Auria and Shwiner claim that they were frequently exposed to harmful pesticides. Their allegations principally focus on the use of a product called "Hot Shot No-Pest 2" or "No-Pest Strips." *Id.* ¶ 36. These strips are alleged to "diffuse a continuous 'deep penetrating vapor' emanating from a 65-gram strip of a toxin called Dichlorvos . . . or DDVP." *Id.* ¶ 38. The Complaint alleges that DDVP is "hazardous to humans" and cites to warnings from the No-Pest Strip's label, as well as the Centers for Disease Control and National Institute for Occupational Safety and Health. *Id.* ¶¶ 40-42. Some of these

2

allegedly warn that the No-Pest Strip should not be deployed in places where food is prepared and they should only be deployed in unoccupied areas. *Id.* ¶ 40.

Plaintiffs claim that "Starbucks management personnel routinely placed numerous sets of DDVP No-Pest Strips" within many Starbucks locations. *Id.* ¶ 46. As part of their work servicing Starbucks locations, D'Auria and Shwiner allege that they were forced to be in unsafe proximity to the No-Pest Strips, at times inhaling the vapor. *Id.* ¶¶ 47, 57; *see also id.* ¶¶ 75-80 (alleging exposure to other hazardous pesticides). This allegedly caused them emotional distress. *Id.* ¶ 106. They claim that they repeatedly warned Starbucks about unsafe DDVP use but to no avail. *Id.* ¶¶ 57-62.

The Complaint does concede that some of those warnings were forwarded to Starbucks managers, including Plaintiff Fox. *Id.* ¶ 53. It alleges that Fox complained about the use of No-Pest strips at his Starbucks store, but had his concerns dismissed by a Starbucks compliance specialist. *Id.* ¶¶ 62-66. The Complaint further claims that Fox was then illegally terminated in retaliation for his complaints regarding the No-Pest strips, as well as concerns he raised about alleged underpayment of Starbucks workers. *Id.* ¶ 15.

## II. MOTION TO DISMISS

### A. Legal Standard

To withstand a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff is not required to provide "detailed factual allegations" in the complaint but must assert "more than labels and conclusions." *Twombly*, 550 U.S. at 555. Ultimately, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.*

3

The Court must accept the allegations in the complaint as true and draw all reasonable inferences in the non-movant's favor. *ATSI Communs, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

**B.     Discussion**

**1. Fox's Negligent Infliction of Emotional Distress Claim**

Starbucks first contends that Fox's negligent infliction of emotional distress claim is barred by New York's workers compensation statute. *See Lue v. JPMorgan Chase & Co.*, No. 16-cv-3207, 2018 U.S. Dist. LEXIS 50749, at *31 (S.D.N.Y. Mar. 27, 2018). In his opposition, Plaintiff Fox states that he does not oppose this part of the motion to dismiss. *See* Memorandum of Law in Opposition, Dkt. No. 20, at 1 n.1. The Court therefore treats Fox's NIED claim as abandoned and dismisses it with prejudice. *See Felix v. City of New York*, 344 F. Supp. 3d 644, 654 (S.D.N.Y. 2018).

**2. D'Auria's and Shwiner's Negligent Infliction of Emotional Distress Claims**

Starbucks also moves to dismiss D'Auria's and Shwiner's negligent infliction of emotional distress claims. To state a negligent infliction of emotional distress claim under New York law, a plaintiff must allege "a breach of a duty of care" that "result[ed] directly in emotional harm." *Taggart v. Costabile*, 14 N.Y.S.3d 388, 398 (N.Y. App. Div. 2015) (quotation omitted). Also, "the claim must possess some guarantee of genuineness," a requirement that can be met if the "breach . . . at least endangered the plaintiff's physical safety or caused the plaintiff to fear for his or her own physical safety," *Id.* at 396, 398 (quotation omitted); *see De Sesto v. Slaine*, 171 F. Supp. 3d 194, 204 (S.D.N.Y. 2016). Starbucks argues that it did not owe D'Auria and Shwiner a duty of care, that it nonetheless exercised reasonable care, and that their claims lack genuineness. The Court addresses each of these in turn.

4

Starbucks first argues that they did not owe a duty of care to D'Auria and Shwiner, because they were hired to correct improper pesticide use. Under New York law, a contractor "cannot recover for injuries received while doing an act to eliminate the cause of the injury." *Kowalsky v. Conreco Co.*, 190 N.E. 206, 207 (N.Y. 1934); *Rojas v. 1000 42nd Street, LLC*, 72 N.Y.S.3d 568, 569 (N.Y. App. Div. 2018); *Hansen v. Trustees of the M.E. Church of Glen Cove*, 858 N.Y.S.2d 303, 304 (N.Y. App. Div. 2008); *Imtanios v. Goldman Sachs*, 843 N.Y.S.2d 569, 571-72 (N.Y. App. Div. 2007); *Bedneau v. New York Hosp. Med. Ctr. of Queens*, 841 N.Y.S.2d 689, 690 (N.Y. App. Div. 2007). However, the Complaint does not unambiguously allege that correcting unsafe pesticide use was part of D'Auria's and Shwiner's duties. Starbucks points to statements in the Complaint that D'Auria and Shwiner responded to "emergent pest control challenges," and that Shwiner was responsible for both "providing periodic training . . . regarding Integrated Pest Management ('IPM') best practices," and for "identify[ing] maintenance and other IPM deficiencies and recommend[ing] appropriate corrective action" during walkthroughs of Starbucks stores. Compl. ¶¶ 24, 28, 29, 30. But drawing all reasonable inferences in favor of Plaintiffs, these allegations plausibly refer only to fighting pests and correcting deficiencies that lead to pests—and not necessarily eliminating hazards caused by Starbucks' do-it-yourself pest control efforts. While handling pesticides may have been part and parcel of D'Auria's and Shwiner's jobs, it is plausible that exposure to pesticides in the hazardous way alleged in the Complaint was not "inherent in the [Plaintiffs'] work." *Hansen*, 858 N.Y.S.2d at 304.

Starbucks' version of the story may ultimately be proven correct after further factual development, but the Court cannot conclude at the motion to dismiss stage that Starbucks did not owe a duty of care to correct the allegedly hazardous pesticide use. Indeed, virtually of all the

cases cited by Starbucks on this point found in favor of the defendant only after discovery, presumably because of the need to determine the precise contours of the plaintiff's job responsibilities.

Second, Starbucks argues that even if it did owe a duty of care to D'Auria and Shwiner, it did not actually breach this duty. It points out that the Complaint admits that Starbucks forbid suppliers and vendors from using DDVP in its operations manual, and forwarded D'Auria's and Shwiner's warnings against using No-Pest strips to store personnel. But Starbucks cites no authority that this constitutes exercising reasonable care as a matter of law. Given the Complaint's allegations regarding the recurrence and hazardousness of the pesticide use, it is plausible that Starbucks was required to take greater corrective actions. Furthermore, the Complaint alleges that Fox's concerns about No-Pest Strips were dismissed by a Starbucks compliance specialist. Compl. ¶¶ 62-66. If this is true, then it suggests that the store personnel were being told mixed messages regarding pesticide use, rather than disclaiming the practice entirely.

Third, Starbucks claims that D'Auria's and Shwiner's claims lack the requisite "guarantee of genuineness," required for negligent infliction of emotional distress claims. *Taggart*, 398 (N.Y. App. Div. 2015) (quotation omitted). As noted above, this requirement may be met by showing that the "breach . . . at least endangered the plaintiff's physical safety or caused the plaintiff to fear for his or her own physical safety." *Id.* at 396; *see De Sesto*, 171 F. Supp. 3d at 204. The Complaint alleges that Starbucks used pesticides in its store. Citing to alleged warnings and a government report, the Complaint claims that these pesticides can pose health risks. And the Complaint alleges that D'Auria and Shwiner, two pest control specialists, were repeatedly exposed to these pesticides in a manner hazardous to their health. Drawing all

6

reasonable inferences in favor the Plaintiffs, it is plausible that D'Auria and Shwiner experienced genuine fear for their physical safety and that this caused them emotional distress. *See* Compl. ¶ 106. Starbucks further claims that it is implausible that D'Auria and Shwiner would continue to service Starbucks locations for years if they were genuinely concerned for their physical safety. But D'Auria and Shwiner may have continued to work at Starbucks in spite of their alleged fears due to economic or other personal reasons. As Starbucks notes regarding the duty of care, people sometimes chose to stay in jobs that do not just involve being repeatedly exposed to hazardous conditions, but where the work itself is inherently dangerous.

Starbucks' motion to dismiss is denied.

### III. MOTION TO SEVER

In the alternative, Starbucks moves to sever D'Auria's and Shwiner's claims from Fox's. Federal Rule of Civil Procedure 21 states that "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party." Under Federal Rule of Civil Procedure 20(a)(1), plaintiffs may be joined in one action if "(A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all plaintiffs will arise in the action." Courts in this Circuit have considered other factors, in addition to the Rule 20 criteria, when evaluating Rule 21 motions, such as "whether settlement of the claims or judicial economy would be facilitated; . . . whether prejudice would be avoided if severance were granted; and . . . whether different witnesses and documentary proof are required for the separate claims." *Oram v. SoulCycle LLC*, 979 F. Supp. 2d 498, 502-503 (S.D.N.Y. 2013). And while "[s]everance requires the presence of only one of these conditions . . . federal courts view

severance as a procedural device to be employed only in exceptional circumstances." *Id.* at 503 (quotations omitted).

Some of these factors weigh against severance. First, D'Auria's and Shwiner's and at least one of Fox's claims appear to arise out of the same transaction, occurrence, or series of transactions or occurrences: Starbucks' allegedly unsafe use of pesticides in its stores. D'Auria and Shwiner claim that they suffered emotional harm because of it, and Fox claims that he was terminated in retaliation for complaining about it. The harms are different, but the source is arguably the same. The claims at this stage appear to be "logically related." *Costello v. Home Depot U.S.A., Inc.*, 888 F. Supp. 2d 258, 263 (D. Conn. 2012). Second, the NIED claims and Fox's pesticide-related retaliation claim may involve common questions of fact. If Manhattan Starbucks store in fact had a problem with improper pesticide use, then it would be more likely that D'Auria and Shwiner suffered emotional distress and that Starbucks was motivated to terminate Fox because of his pesticide complaints. Additionally, the factual issue of whether Fox's concerns about pesticides were initially dismissed may also bear on whether Starbucks was exercising reasonable care in response to reports of improper pesticide use. Third, judicial economy would be served by keeping these claims together, at least for the time being. Much of the discovery regarding alleged complaints about pesticide use at Starbucks' Manhattan locations, as well as the response to those complaints, will be overlapping. Permitting the pesticide claims to be joined will promote efficiency during the discovery process.

However, some factors do weigh in favor of severance. The Court agrees with Starbucks that prejudice may occur if all of these claims were eventually tried together. The allegations regarding the harm D'Auria and Shwiner allegedly suffered might improperly influence the factual determination of whether Fox's termination was retaliatory and vice versa. Additionally,

the jury may be confused by Fox's other claim, that he was terminated in retaliation for a wage underpayment issue that is completely unrelated to pesticides. Relatedly, while some evidence will likely overlap, there will likely be distinct witnesses and proof at trial because the theories of liability are distinct.

Weighing the factors, the Court finds that severance is not warranted at this time. All of the pesticide claims appear to be logically related and factually interconnected. Moreover, the magnitude of the prejudice to Starbucks and the extent to which the evidence differs for each claim is hard to determine at this early stage. In contrast, the benefits from overlapping discovery will be immediate. However, the Court notes that further factual development may reveal that the pesticide claims are less related than they initially appear and may allow Starbucks to demonstrate that the prejudice from trying all of these claims together will be acute. Therefore, the Court denies Starbucks' severance motion without leave to renew in advance of trial. *See Iconix Brand Grp., Inc. v. Roc Nation Apparel Grp., LLC*, No. 17-cv-3096, 2019 U.S. Dist. LEXIS 169140, at *7-*8 (S.D.N.Y. Sept. 26, 2019) (denying motion to sever without prejudice to renew); *Lyons v. Litton Loan Servicing LP*, No. 13-cv-513, 2014 U.S. Dist. LEXIS 138879, at *22 (S.D.N.Y. Sept. 29, 2014) (same); *Oram*, 979 F. Supp. 2d at 505 (same).

## IV.  CONCLUSION

For the reasons articulated above, Defendant's motion to dismiss is GRANTED with respect to Fox's negligent infliction of emotional distress claim and DENIED with respect to D'Auria's and Shwiner's negligent infliction of emotional distress claims. Its motion to sever is DENIED with leave to renew in advance of trial.

This resolves Dkt. No. 14.

SO ORDERED.

Dated: March 2, 2020
New York, New York

_____
ALISON J. NATHAN
United States District Judge