# FILOSA GRAFF LLP

Ariel Y. Graff
(212) 203-3473
agraff@filosagraff.com

September 23, 2020

**VIA ECF**

The Hon. Sarah Netburn
United States Magistrate Judge
Southern District of New York
40 Foley Square
New York, NY 10007

      Re:    *Fox, et al. v. Starbucks Corporation* – Case No. 19-cv-4650 (AJN)(SN)

Dear Judge Netburn:

We represent Plaintiffs in the above-referenced matter, and write, pursuant to Rule II(C) of Your Honor's individual practices, to respectfully request an informal conference to address the three discovery disputes outlined below, which involve Plaintiffs' efforts to secure discovery concerning (I) the factual basis for certain representations that Starbucks furnished to the press in connection with this case; (II) a verified statement from Starbucks detailing the document retention practices that have resulted in the extremely limited timeframe for which Starbucks has produced documentation reflecting the purchase of DDVP and other prohibited pesticides by managers in New York; and (III) text messages concerning Plaintiffs in the possession or control of Starbucks's personnel who have (or will) testify at depositions in this case.[1]

## I.    Factual Basis for Starbucks's Public Denial of Health Risks

As set forth in the Complaint, Plaintiff Fox alleges that he was unlawfully terminated from his employment as a Starbucks Store Manager due, in part, to Defendant's retaliation against him for having raised complaints concerning the suspected secretive deployment of hazardous pesticides in stores by Starbucks's management, including "Hot Shot" brand "No Pest Strips" (which contain the toxin Dichlorvos/DDVP), among other prohibited and dangerous products. Plaintiffs Shwiner and D'Auria – who worked for a pest control vendor contracted by Starbucks – allege that they suffered emotional distress due to Starbucks's negligence in repeatedly and involuntarily exposing them to these and other products in their workplace.

---

[1]     Prior to making this application, we conferred with Defendant's counsel telephonically on repeated occasions (most recently yesterday) to attempt to resolve these disputes without the Court's intervention. Other disputes for which the meet-and-confer process remains ongoing are not addressed in this application. Plaintiffs also write under separate cover today to request the Court's intervention to quash a Rule 45 subpoena that Defendant served upon a 75-year-old retiree purporting to compel her to testify at a deposition on less than one-week's notice.

On May 21, 2019, in connection with the recent filing of this case, an outside spokesperson for Starbucks circulated a written statement to certain news organizations, several of which quoted from the statement directly in their reporting. Starbucks's statement to the press provided, in part, as follows:

> "To reiterate the on-background information, products used in our stores must meet high safety standards in order to comply with our company guidelines. Upon hearing reports that employees had used a product that violated company guidelines, Starbucks immediately instructed local leadership to remove these products. We can confirm that these products have been removed.
>
> Additionally, I can confirm that we consulted with experts who concluded that based on how the strips were used in stores, **employees and customers were not exposed to health risks.** Please feel free to use that information, attributable to a Starbucks spokesperson, in any article/segment you end up writing. "

(at DEF0045453) (emphasis in original).

Plaintiffs suspect that Starbucks's claim to have purportedly consulted with "experts" who concluded that "employees and customers were not exposed to health risks" is simply a fabrication invented out of whole cloth. To the extent that Starbucks responded to the allegations of Plaintiffs' Complaint by directing an outside spokesperson (who did not identify herself as working with or under the direction of counsel) to simply lie and relay baseless, fanciful misinformation, that conduct would surely bear on Defendant's credibility at trial. Plaintiffs therefore sought, through multiple discovery devices, to obtain information concerning the factual basis (if any) for the spokesperson's statement concerning experts who determined that no one was exposed to any health risk.[2]

---

[2] Request No. 41 of Plaintiffs' First Set of Document Requests (Oct. 25, 2019) sought production of "documents and electronically stored information concerning, supporting or contradicting the public statement by Defendant's representative on or about May 21, 2019 to the effect that 'I can confirm that we consulted with experts who concluded that based on how the strips were used in stores, employees and customers were not exposed to health risk.'"

Plaintiffs' Interrogatory No. 3 (Oct. 25, 2019) called for Starbucks to "Identify each and every person who has knowledge in any way relating to the factual basis for Defendant's claim that 'I can confirm that we consulted with experts who concluded that based on how the strips were used in stores, employees and customers were not exposed to health risk' as publicly stated by a spokesperson for Defendant on or about May 21, 2019."

Finally, Plaintiffs' Contention Interrogatory No. 13 (Aug. 14, 2020) – to which Defendant responded yesterday – sought identification of "each and every specific fact or item of evidence that Starbucks contends constitutes the factual basis for its claim 'that we consulted with experts who

Starbucks nevertheless rebuffed all three of Plaintiffs' various forms of request for this information, invoking a hodgepodge of objections, including irrelevance, overbreadth, burden, as well as attorney-client and/or work product privilege. In the course of meet-and-confer discussions, however, Starbucks's counsel has indicated that Defendant is resting primarily on its invocation of attorney-client privilege and/or work-product to justify its refusal to provide any of the basic factual information that Plaintiffs have repeatedly sought.

Defendant's reliance on privilege to resist disclosing the facts upon which its spokesperson based her substantive and purportedly factual statement to the press is nevertheless misplaced. It is well settled that "when a public relations consultant has performed nothing other than standard public relations services" – as is the case here – "the normal rule applies and disclosure of privileged communications to the consultant will result in a waiver." *Pearlstein v. Blackberry Ltd.*, No. 13-cv-07060 (CM)(KHP), 2019 U.S. Dist. LEXIS 45098, at *18 (S.D.N.Y. Mar. 19, 2019) (citing, *inter alia*, *Haugh v. Schroder Inv. Mgt. N. Am., Inc.*, 2003 U.S. Dist. LEXIS 14586, at *7-8 (S.D.N.Y Aug. 25, 2003) (communications not privileged because no showing that public relations specialist performed anything other than standard public relations services or that communications were necessary to the provision of legal advice)).

Here, the statement that Starbucks's external public relations representative furnished to the press to characterize the Company's fact-based response to Plaintiffs' allegations seems clearly untethered from facilitating Defendant's counsels' ability to provide legal advice to its own client. As such, any privilege that might have adhered has been waived. Plaintiffs therefore respectfully request that the Court direct Defendant to respond in full to each of Plaintiffs' three prior discovery demands for this information, including, in particular, Plaintiffs' contention Interrogatory No. 13.[3]

## II. Declaration Concerning Loss or Destruction of Documentation Reflecting the Purchase of Prohibited Pesticides with Company Funds

On March 8, 2020, Plaintiffs filed an application seeking to compel production of expense report documentation created by Starbucks stores in Manhattan in connection with miscellaneous purchases using Company-issued Visa Purchasing Cards ("P-Cards"). Plaintiffs argued that these materials were reasonably calculated to lead to the discovery of evidence demonstrating that Starbucks's management personnel were personally and directly responsible for acquiring DDVP and other prohibited pesticides to be deployed unlawfully in stores and, moreover, that they documented the use of Starbucks's funds for such purchases which were also approved by District Managers on a line-item basis.

---

concluded that based on how the strips were used in stores, employees and customers were not exposed to health risk' as publicly stated by a spokesperson for the Company on or about May 21, 2019."

[3]    Consistent with Local Civil Rule 33.3(c), Plaintiffs' Interrogatories seeking the claims and contentions of Starbucks were served at least 30 days prior to the-then-current deadline for completion of discovery. Plaintiffs' contention interrogatories are also appropriately crafted to secure information that Plaintiffs have been unable to obtain through other forms of discovery despite repeated attempts.

The Court orally granted Plaintiffs' application during a telephone conference on May 19, 2020. The Court also directed Starbucks to file a letter to the Court detailing the document retention and storage protocols for the subject expense reporting materials—as Defendant had asserted that those materials were stored remotely and could not be readily retrieved. On March 26, Defendant filed the first in a series of letters seeking to extend its time to report to the Court on its own document retention and retrieval protocols, as well as its time to produce the documentation at issue. Defendant filed similar letters on March 26, April 27, May 1, May 28 and July 1, 2020.

Starbucks ultimately produced a tranche of the requested documentation — but only for the period from approximately January 1, 2019 through summer 2020 (with a handful of records from summer 2018). But Plaintiff Fox was terminated from his employment with Starbucks in February 2018, and Plaintiffs D'Auria and Shwiner ceased providing services to Starbucks by mid-2018 as well. Thus, although the records that Starbucks produced did, indeed, reflect purchases of DDVP and other prohibited pesticides by management personnel, those records are from outside the timeframe most at-issue in this case.

To establish an evidentiary foundation for the record retention practices that resulted in the asserted unavailability of the expense report materials for the period corresponding to Plaintiffs' employment, Plaintiffs' counsel requested that Starbucks furnish a copy of its official document retention schedule for the subject records. Yet Starbucks's counsel agreed to produce only one (ambiguous) page from its retention protocols and, moreover, insisted that it would do so on only an "attorneys-eyes only basis." The absence of a retention schedule or testimony concerning retention practices leaves Plaintiffs unfairly exposed at trial, however, to potential efforts by Starbucks to preclude records that post-date Plaintiffs' employment from evidence, or to argue that Plaintiffs are somehow unable to establish proof of their claims for the relevant period because such evidence purportedly does not exist.

Having been unable to otherwise secure this information in discovery, Plaintiffs served Contention Interrogatory No. 12 (Aug. 14), which called upon Starbucks to:

> State the dollar amount of Starbucks's Company funds expended on the acquisition of DDVP strips by Company employees who worked in Starbucks stores in New York County, New York, from January 1, 2015 to the present, including the dates and quantities of DDVP strips so acquired. If Starbucks lacks information sufficient to fully respond to this Interrogatory, state in full and complete detail what specific gaps in Defendant's financial controls and regulation of employee expenditures of Company funds constitute the basis for its inability to fully so respond.

Yet Starbucks objected to this interrogatory on September 11 and amended its objections yesterday — invoking a litany of stock objections before concluding: "Defendant states that it is not aware of, and has no reasonable means to calculate, the specific dollar amount that was spent on the unapproved purchasing of DDVP strips by individual Starbucks employees from January 2015 to the present."

In conferring with counsel as to this response, Plaintiffs' counsel suggested that its insufficiency might be addressed, instead, by way of an affidavit or verified interrogatory response by a person with personal knowledge who can attest to the underlying record retention practices and scope of availability of the subject records — so as to provide context and foundation concerning the time-limited scope of Defendant's production. Defendant did not agree to this compromise proposal. Plaintiffs therefore respectfully request that Defendant be directed to respond to Interrogatory 12 as written, including, in particular, by detailing "what specific gaps in Defendant's financial controls and regulation of employee expenditures of Company funds constitute the basis for its inability to fully so respond."

### III. Deponents' Responsive Text Messages Concerning Plaintiffs

During the course of depositions of Starbucks's employees in this action, it became apparent that many witnesses utilized Company-issued "smart phones" to communicate with one another about work-related matters. However, no witness had at any point in time searched (or been directed to search) for any text messages that might be relevant to this case or otherwise responsive to Plaintiffs' discovery requests. Plaintiffs' counsel wrote to Defendant's counsel about this issue (among others) on August 28. During a telephonic meet-and-confer on September 1, Defendant's counsel acknowledged that it had neglected to produce such materials and that it would supplement its production accordingly. But Defendant has not provided this supplementation to-date, nor has Defendant even committed to producing them by any date-certain. Plaintiffs therefore respectfully request that the Court direct Defendant to immediately produce responsive text messages in the custody or control of deposition witnesses or other individuals identified in Defendant's initial disclosures.

*   *   *   *

We look forward to the opportunity to address the foregoing disputes before Your Honor at an informal conference.

Thank you for Your Honor's consideration

Respectfully submitted,

*/s/ Ariel Graff*
Ariel Y. Graff

cc:     All counsel of record