**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

RAFAEL FOX, PAUL D'AURIA, and JILL
SHWINER,

                Plaintiffs,

     vs.

STARBUCKS CORPORATION d/b/a
STARBUCKS COFFEE COMPANY,

              Defendant.

Case No.: 19-CV-4650 (AJN)(SN)

# PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION
# TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**FILOSA GRAFF LLP**
Ariel Y. Graff
Gregory N. Filosa
111 John Street, Suite 2510
New York, NY 10038
Tel: (212) 203-3473
*ATTORNEYS FOR PLAINTIFFS*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................1

STATEMENT OF FACTS ............................................................................3

ARGUMENT ................................................................................................3

  I.    LEGAL STANDARD ..........................................................................4

  II.    FOX'S RETALIATION CLAIMS MUST PROCEED TO TRIAL......................5

        A.     FLSA and NYLL Retaliation Claims Based on Complaints of Unpaid Wages...................................................................................6

            i.     Mr. Fox Engaged in Protected Activity ...........................................6

            ii.     Mr. Fox's Protected Activity was "Known" to Starbucks...............7

            iii.     Causal Connection and Pretext ........................................................8

        B.     NYLL Retaliation Claim Based on Complaint About Ongoing Misuse of Pest Strips in Starbucks Stores..................................................11

            i.     Fox Engaged in Protected Conduct...............................................12

            ii.     Starbucks Had "Knowledge" of Mr. Fox's Protected Conduct.....13

            iii.     Causal Connection and Pretext ......................................................13

  III.    PLAINTIFFS D'AURIA AND SHWINER'S CLAIMS FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS MUST PROCEED TO TRIAL .......15

        A.     Starbucks Negligently Breached ts Duty of Care by Allowing Managerial Employees to Secretly Apply Hazardous Pesticides in an Illegal Manner in the Starbucks's Locations that Plaintiffs Shwiner and D'Auria were Assigned to Service......................................................................15

        B.     Starbucks's Failure to Stem the Systematic Misuse of Pesticides by Store Personnel Was Surely "Negligent"...........................................18

        C.     D'Auria and Shwiner's NIED Claim Demonstrates the Requisite "Guarantee of Genuineness".....................................................19

  CONCLUSION............................................................................................20

# TABLE OF AUTHORITIES

**CASES**

*Anderson v. Bush Indus.*, 280 A.D.2d 949 (4th Dep't 2001) ............................................17

*Armstrong v. Metro. Transp. Auth.*, No. 07 Civ. 3561 (DAB),
2014 U.S. Dist. LEXIS 121159 (S.D.N.Y. Aug. 28, 2014) ...................................................8

*Byrnie v. Town of Cromwell*, 243 F.3d 93 (2d Cir. 2001) ...................................................9

*Cityspec, Inc. v. Smith*, 617 F. Supp. 2d 161 (E.D.N.Y. 2009) ...........................................4

*Comes v. N.Y. State Elec. & Gas Corp.*, 82 N.Y.2d 876 (1993) ........................................17

*De Sesto v. Slaine*, 171 F. Supp. 3d 194 (S.D.N.Y. 2016) .................................................15

*Figura v North Country Janitorial, Inc.*, 53 Misc. 3d 881,
37 N.Y.S.3d 697 (Sup Ct Warren County 2016) ...............................................................12

*Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93 (2d Cir. 2010) .....................................11

*Hansen v. Trs. of the Methodist Episcopal Church of Glen Cove*
51 A.D.3d 725 (2d Dep't 2008) ........................................................................................17

*Higueros v. New York State Catholic Health Plan, Inc.*
526 F. Supp. 2d 342 (E.D.N.Y. 2007) ................................................................................5

*Holcomb v. Iona Coll.,* 521 F.3d 130 (2d Cir. 2008) ..........................................................4

*Imtanios v. Goldman Sachs*, 843 N.Y.S.2d 569 (1st Dep't 2007) .....................................17

*Jacques v. DiMarzio, Inc.*, 200 F. Supp.2d 151 (E.D.N.Y. 2002) ......................................6

*Jock v. Fien*, 80 N.Y.2d 965 (1992) ..................................................................................12

*Kessler v. Westchester*, 461 F.3d 199 (2d Cir. 2006) .........................................................4

*Kowalsky v. Conreco Co.*, 264 N.Y. 125 (1934) ...............................................................16

*Kreinik v. Showbran Photo, Inc.*
2003 U.S. Dist. LEXIS 18276 (S.D.N.Y. Oct. 10, 2003) .....................................................6

*Lopez v. Advantage Plumbing & Mech. Corp.*,
No. 15 Civ. 4507 (AJN), 2016 U.S. Dist. LEXIS 43608 (S.D.N.Y. Mar. 30, 2016) ...........7

*Mullins v. City of New York*, 626 F.3d 47 (2d Cir. 2010) .....................................................5

*Murray v. Visiting Nurse Servs. of N.Y.*, 528 F. Supp. 2d 257 (S.D.N.Y. 2007) ................8

*Patane v. Clark*, 508 F.3d 106 (2d Cir. 2007) .....................................................8

*Perez v. United Pharm USA Inc.*, 2018 NY Slip Op 30273(U) (Sup. Ct.) ......................5-6

*Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000) ............................8-9

*see Rojas v. 1000 42nd St., LLC*, 72 N.Y.S.3d 568 (2d Dep't 2018).................................16

*Santos v. Costco Wholesale, Inc.*, 271 F. Supp. 2d 565 (S.D.N.Y. 2003) ......................4-5

*Sarit v. Westside Tomato, Inc.*, No. 18 Civ. 11524 (RA),
2020 U.S. Dist. LEXIS 67074 (S.D.N.Y. Apr. 16, 2020 ..................................................7-8

*Schaper v. Bronx Lebanon Hosp. Ctr.*, 408 F. Supp. 3d 379 (S.D.N.Y. 2019) ..................8

*Taggart v. Costabile*, 131 A.D.3d 243 (2nd Dep't 2015) ..........................................15, 20

*Weiss v. Kaufman*, 2010 NY Slip Op 33261(U),
2010 N.Y. Misc. LEXIS 5699 (Sup. Ct. NY County, Nov. 22, 2010) .........................7, 12

*Zann Kwan v. Andalex Grp.,* 737 F.3d 834 (2d Cir. 2013).........................................4, 8, 9

*Zimmitti v. Aetna Life Ins. Co.*, 64 F. Supp. 2d 69, 79 (D. Conn. 1999) .........................10

**STATUTES**

Fed. R. Civ. P. 56 ........................................................................................................ 4

New York Labor Law § 200 ..................................................................................... 13

New York Labor Law § 215 ................................................................................. 7, 12

Plaintiffs Rafael Fox ("Mr. Fox"), Paul D'Auria ("Mr. D'Auria") and Jill Shwiner ("Ms. Shwiner") (collectively, "Plaintiffs") respectfully submit this memorandum of law in opposition to the motion for summary judgment by Defendant Starbucks Corporation d/b/a Starbucks Coffee Company ("Defendant," "Starbucks," or the "Company").

## PRELIMINARY STATEMENT

Plaintiff Rafael Fox was a high-performing, award winning Starbucks' employee and Store Manager for sixteen years – until he (i) discovered and agitated to remedy the underpayment of earned wages owed to at least one-hundred fellow Starbucks store employees, and perhaps thousands more; and (ii) raised urgent complaints concerning the persistent misuse of invisible, odorless – but highly toxic airborne pesticides by Starbucks personnel within Starbucks stores in New York. Although Mr. Fox had assumed that his diligence in identifying these practices would be applauded by his superiors, Starbucks instead launched a campaign bent on justifying his sudden, ignominious termination based on invented or exaggerated errors in connection with his implementation of New York City's recently enacted Fair Workweek legislation.  Ultimately, within weeks of raising his complaints in the expectation that Starbucks would take prompt and appropriate corrective action on these matters, Starbucks' senior Regional management purportedly concluded that Mr. Fox had demonstrated a perceived lack of "integrity" and "trustworthiness" and terminated his employment on this basis.

What Mr. Fox had failed to realize was that Starbucks did not *want* to remedy the two issues that he raised. District leadership was fully aware that employees had been deprived of earned wages due to time clock manipulation, but nevertheless failed to notify the impacted employees or issue backpay to correct for the withholding of earned wages. So long as no employees identified the problem and demanded compensation directly, Starbucks' leadership

affirmatively preferred to keep its employees in the dark and keep their earned wages for itself. Starbucks knowing tolerance for its managerial personnel's frequent deployment of highly powerful and hazardous poisons into their stores also suited Starbucks' purposes. Filthy and poorly maintained stores generally require repairs and upkeep to prevent them from becoming infested with all manner of pests. Rather than devote the substantial time and resources required to prevent such conditions, Starbucks was fully tolerant of its managerial personnel's resort to "self-help" deployment of toxic chemicals on an indefinite, years-long basis. Because Mr. Fox was alarmed and opposed to the associated health hazards of allowing this practice to continue, Starbucks abruptly decided that he could no longer be "trusted" and fired him after sixteen years of dedicated service on this basis. Under these circumstances, Starbucks' purportedly neutral, non-retaliatory justification for Mr. Fox's termination – based on a suddenly new, subjective perception that he was suddenly no longer "trustworthy" – is necessarily replete with material disputed facts as to motive and credibility that cannot be resolved in its favor on a motion for summary judgment.

Plaintiffs D'Auria and Shwiner were contracted to provide professional pest control services at Starbucks stores throughout Manhattan, including during Mr. Fox's employment. In the course of providing those services, Mr. D'Auria and Ms. Shwiner were repeatedly involuntarily exposed to hazardous pesticides that Starbucks personnel systematically hid throughout its Manhattan store locations over a period of years — notwithstanding Mr. D'Auria and Ms. Shwiner's repeated written and oral complaints to Starbucks Regional and District Managers about the illegality of deploying such toxins in occupied spaces due to the well-established health hazards associated with human exposure.

By allowing its personnel to continue to systematically hide these toxins in the store locations that Mr. D'Auria and Ms. Shwiner were contracted to service, Starbucks violated its common law duty of care to provide them with a safe place to work. As a direct result of this breach of its duty of care, Starbucks endangered Mr. D'Auria and Ms. Shwiner's health and caused them to fear for their physical safety, thereby establishing the elements for their respective claims for negligent infliction of emotional distress ("NIED").

Starbucks's motion for summary judgment on Mr. D'Auria and Ms. Shwiner's NIED claims should be denied, as it hinges on Starbucks' disputed mischaracterization of the nature of their allegations in at least two critical respects. First, Starbucks mischaracterizes its negligent exposure of Mr. D'Auria and Ms. Shwiner to toxic chemicals as merely part and parcel of the professional pest management services that they were hired to provide. Yet, the record demonstrates that Mr. D'Auria and Ms. Shwiner's exposure to toxic poisons that Starbucks hid in their work locations against their urgent warnings was scarcely a standard risk inherent in the nature of the professional services that they were hired to provide. Instead, the exposure was caused by Starbucks's negligent and systemic deployment of hazardous poisons in their worksites. Starbucks also mischaracterizes the evidence by asserting that Mr. D'Auria and Ms. Shwiner were not plausibly placed in fear for their health and safety as a result of being involuntarily exposed to hidden poisons that contain explicit health and safety warnings on their labels, and have been found to be hazardous to health and safety by government regulators. Starbucks' motion for summary judgment on Plaintiffs D'Auria and Shwiner's NIED claims should therefore be denied.

## STATEMENT OF FACTS

For a full statement of material disputed facts as to which there is genuine issue to be tried, the Court is respectfully referred to Plaintiffs' Rule 56.1(b) Counterstatement Statement and Statement of Additional Material Facts in Dispute, dated March 1, 2021 ("Pls. 56.1 ¶ _"), as well as the Declaration of Ariel Y. Graff, dated March 1, 2021 and the exhibits annexed thereto.

## ARGUMENT

## I.     LEGAL STANDARD

Summary judgment is only appropriate where "there is no genuine issue as to any material fact." FRCP 56(c). The Court must view all facts in the light most favorable to the non-moving party, resolving all ambiguities and drawing all inferences in its favor. *See Tomassi v. Insignia Financial*, 478 F.3d 111, 116 (2d Cir. 2007). "The judge's function is not . . . to weigh the evidence and determine the truth of the matter." *Kessler v. Westchester*, 461 F.3d 199, 206 (2d Cir. 2006). To the contrary, "[t]he Court should not grant summary judgment if there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party." *Cityspec, Inc. v. Smith*, 617 F. Supp. 2d 161, 168 (E.D.N.Y. 2009).

Importantly, the Second Circuit has also made clear summary judgment is especially ill-suited to employment cases where—as here—a central dispute of material fact has to do with the employer's motive for terminating an employee *See Zann Kwan v. Andalex Grp.*, 737 F.3d 834, 843 (2d Cir. 2013) (noting the "need for caution about granting summary judgment to an employer in a discrimination case where . . . the merits turn on a dispute as to the employer's intent" (quoting *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008)); *see also Santos v. Costco Wholesale, Inc.*, 271 F. Supp. 2d 565, 571 (S.D.N.Y. 2003) ("Summary judgment is 'ordinarily inappropriate' in the context of a workplace discrimination case because the

allegations usually require an exploration into an employer's true motivation and intent for making a particular employment decision . . ." And "[e]mployers are rarely so cooperative as to include a notation in the personnel file that the [adverse employment action] is for a reason expressly forbidden by law.") (citations omitted).

As set forth below, Defendant has failed to carry its burden for summary judgment under these standards with respect any of Plaintiffs' claims, and its motion should therefore be denied

## II.    <u>FOX'S RETALIATION CLAIMS MUST PROCEED TO TRIAL</u>

The standards for stating a claim for retaliation under the FLSA and the New York Labor Law significantly overlap. Each require that, to state a claim, a plaintiff must plead facts showing a *prima facie* case of retaliation, namely: (1) participation in protected activity known to the defendant; (2) an employment action disadvantaging the plaintiff (here, Starbucks' termination of Mr. Fox's employment); and (3) a "nexus" or causal connection between the protected activity and the adverse employment action. *See Mullins v. City of New York*, 626 F.3d 47 (2d Cir. 2010) (FLSA); *Higueros v. New York State Catholic Health Plan, Inc.*, 526 F. Supp. 2d 342, 347 (E.D.N.Y. 2007) (New York Labor Law).

Once a *prima facie* case is established, the burden shifts to the employer to provide a legitimate, non-retaliatory justification for its challenged conduct. The burden then shifts back to the employee to demonstrate that: (i) the reasons for termination were false; <u>**or**</u> (ii) the reasons are pretext and protected activity was the cause of the termination. Under the NYLL, an employee may also carry this burden by (iii) demonstrating that his protected complaints were "*a motivating factor*" that was "*also* in the employer's mind" in the course of its termination decision, even without demonstrating that Defendant's proffered reason for the termination was entirely false. *Perez v. United Pharm USA Inc.*, 2018 NY Slip Op 30273(U), ¶ 6 (Sup. Ct.) ("On

a motion for summary judgment on a retaliation claim, the question before the Court is not whether [p]laintiff has actually demonstrated that [d]efendants' proffered reason for her termination was entirely false, but rather, whether, based on the evidentiary showing to date, [p]laintiff may invite the jury to ignore the [d]efendants' proffered legitimate explanation and conclude that retaliation was a motivating factor, whether or not the employer's proffered explanation was also in the employer's mind.") (construing NYLL 215); *Kreinik v. Showbran Photo, Inc.*, 2003 U.S. Dist. LEXIS 18276, at *31 (S.D.N.Y. Oct. 10, 2003) (finding pleading sufficient where plaintiff's "allegations sufficiently plead that his labor law complaints were *a motivating factor* for [the employer's] adverse action") (emphasis added); *Jacques v. DiMarzio, Inc.*, 200 F. Supp.2d 151, 155, 162 (E.D.N.Y. 2002) (finding that termination shortly after making NYLL complaint indicated that labor law complaints could have been *a motivating factor* for the employee's discharge) (emphasis added).

### A. FLSA and NYLL Retaliation Claims Based on Complaints of Unpaid Wages

#### i. Mr. Fox Engaged in Protected Activity

Mr. Fox engaged in protected activity under the FLSA and NYLL by reporting to his then-District Manager Les Fable that numerous employs who worked or previously worked at the Broadway and West Leonard store – to which he was reassigned as store manager in October 2017 – had been deprived of wages due to time clock manipulation by the former manager of that location. Pls. 56.1 ¶¶ 142, 144-147.

Mr. Fox reasonably believed that depriving employees of earned wages through manipulation of their clock records of hours worked was a violation of applicable federal and state wage and hour laws, and Mr. Fox sought to remedy those illegal underpayments by investigating and bringing his findings to Mr. Fable's attention to facilitate corrective action. Pls. 56.1 ¶¶ 148-49. Mr. Fox furthered his protected activity by expanding the scope of his

investigation, identifying further substantial evidence of even more widespread wage theft from employees at his new store location, and escalating the same to the attention of Tim Hutchinson when he succeeded Fable as District Manager for Mr. Fox's new store location. Pls. 56.1 ¶¶ 150-151.

Mr. Fox's efforts to raise concerns about Defendant's failure to pay certain employees' wages for all hours that they worked easily meets the definition of protected activity under the FLSA and New York Labor Law. *Lopez v. Advantage Plumbing & Mech. Corp.*, No. 15 Civ. 4507 (AJN), 2016 U.S. Dist. LEXIS 43608, at *6 (S.D.N.Y. Mar. 30, 2016) (plaintiff's complaints "about missing hours on his paychecks" and "missing overtime hours" are protected activity under the FLSA and NYLL). New York Labor Law § 215(1)(a) explicitly protects employees who have "made a complaint to his or her employer . . . that the employer has engaged in conduct that the employee, reasonably and in good faith, believes violates any provision" of the Labor Law. N.Y. LABOR LAW § 215(1)(a)(i). An employee does not need to "make explicit reference to any section or provision of this chapter to trigger the protections of [Labor Law § 215]." N.Y. Labor Law § 215(1)(a). Instead, "[a]ll that is required is that the complaint to the employer be a colorable violation of the statute." *See Weiss v. Kaufman*, 2010 NY Slip Op 33261(U), ¶ 5, 2010 N.Y. Misc. LEXIS 5699, *4 (Sup. Ct. NY County, Nov. 22, 2010). Here, Mr. Fox's complaints to his two successive District Managers about unpaid wages owed to numerous employees are therefore sufficient to satisfy this element.

### ii. Mr. Fox's Protected Activity was "Known" to Starbucks

"[F]or purposes of a prima facie case, a plaintiff may rely on general corporate knowledge of her protected activity to establish the knowledge prong of the *prima facie* case." *Sarit v. Westside Tomato, Inc.*, No. 18-CV-11524 (RA), 2020 U.S. Dist. LEXIS 67074, at *21-22

(S.D.N.Y. Apr. 16, 2020 (quoting *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 844 (2d Cir. 2013) (internal quotation marks and citation omitted); *see also Patane v. Clark*, 508 F.3d 106, 115 (2d Cir. 2007) ("[N]either this nor any other circuit has ever held that, to satisfy the knowledge requirement, anything more is necessary than general corporate knowledge that the plaintiff has engaged in a protected activity.").

"Courts have found general corporate knowledge to arise when a supervisor, corporate officer, or employee whose job is to investigate and resolve discrimination complaints becomes aware of the protected activity." *Armstrong v. Metro. Transp. Auth.*, No. 07 Civ. 3561 (DAB), 2014 U.S. Dist. LEXIS 121159, *20 (S.D.N.Y. Aug. 28, 2014); *see also, e.g.*, *Schaper v. Bronx Lebanon Hosp. Ctr.*, 408 F. Supp. 3d 379, 391 (S.D.N.Y. 2019) (plaintiff's complaints to supervisors were sufficient to satisfy the second element of her retaliation claim); *Murray v. Visiting Nurse Servs. of N.Y.*, 528 F. Supp. 2d 257, 270 (S.D.N.Y. 2007) (plaintiff's "two complaints to his supervisor [] regarding the purportedly offensive conduct of his coworkers . . . clearly satisfy the 'knowledge requirement' of the . . . prima facie standard"). Here, Mr. Fox's complaints to his two successive District Managers about unpaid wages owed to numerous employees are therefore sufficient to satisfy this element.

### iii.    Causal Connection and Pretext

Mr. Fox can amply demonstrate a causal connection between his protected complaints detailing unpaid wages owed to numerous employees and Starbucks' termination of his employment on multiple alternative and cumulatively reinforcing grounds.

*First*, Mr. Fox has demonstrated that Starbucks' asserted justification for his termination is false. *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 148 (2000) ("prima facie case, combined with sufficient evidence to find that the employer's asserted justification is

false, may permit the trier of fact to conclude that the employer unlawfully discriminated."); *Byrnie v. Town of Cromwell*, 243 F.3d 93, 102 (2d Cir. 2001) ("A motion for summary judgment may be defeated where a plaintiff's prima facie case [is] combined with sufficient evidence to find that the employer's asserted justification is false."). In particular, at the time of Mr. Fox's termination, Starbucks' counsel claimed that Mr. Fox's compliance with the newly enacted Fair Workweek legislation was *not* the primary basis for the decision to terminate his employment, and instead claimed that Mr. Fox was terminated primarily "due to his 'overall work performance, ethics, and integrity.'" Pls. 56.1 ¶¶ 99 ("more integrity issues than FWL procedures is what led to his termination.").

But the incidents that Starbucks invokes as the basis for its determination to terminate Mr. Fox's employment are either unsubstantiated or vigorously disputed. *See, e.g.,* Pls. 56.1 ¶ 61; *see also id*. ¶¶ 76, 78-79 (Defendant's Regional Director, claiming to have observed Mr. Fox engaging in misconduct that did not occur at all, on a date when she did not visit his store, and more than one month removed from her most recent prior visit); *id.* ¶ 94 (Defendant's Compliance Specialist, purportedly concluding that Mr. Fox willfully violated her instructions to issue predictability pay when, in reality, she had already instructed him in writing that he should *not* issue such payment).

*Second*, Mr. Fox has demonstrated – at the very least -- that Starbucks explanation for its decision to terminate his employment is implausible in light of these inconsistent or invented purported justifications for its decision. *Kwan*, 737 F.3d at 846 ("A plaintiff may prove that retaliation was a [] cause of an adverse employment action by demonstrating weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate, nonretaliatory reasons for its action."). Starbucks' claim that Mr. Fox willfully refused to comply

with instructions concerning the Fair Workweek legislation so as to deprive employees at his store of compensation also does not square with the fact that Mr. Fox had been agitating for months to remedy the wage theft perpetrated against those same employees by the former manager at the Broadway and West Leonard store. *Compare* Pls. 56.1 ¶ 65, *with* ¶ 94

*Third,* Defendant's Regional Director's claim to have terminated the prior store manager for his illicit time clock manipulation – without taking any action to correct the underpayment of wages owed to employees at that store (Pls. 56.1 ¶ 56) – is so implausible as to permit a jury to infer that her failure to remedy the acknowledged wage theft was a gross departure from Starbucks' stated policies and demonstrates that her invocation of alternative, but wholly invented (*id.* ¶¶ 76, 78-79), justifications for Mr. Fox's termination is mere pretext. *See Zimmitti v. Aetna Life Ins. Co.*, 64 F. Supp. 2d 69, 79 (D. Conn. 1999) ("Failure to follow an organization's stated policies or routine procedures can be evidence of pretext.").

The same is true of the collective failure of *any* other manager or executive at the Company to ever take action to issue corrective backpay to the employees who were subject to illicit time clock manipulation. Pls. 56.1 ¶ 56. Starbucks' incongruous declination to issue such backpay in connection with the time clock manipulation that Ruffin claims to have identified, coupled with Starbucks' insistence that Mr. Fox was purportedly terminated for (at most) innocent errors in adapting to new legislation along with all other store managers in his district, renders its explanation so implausible and so inconsistent with Starbucks asserted policies as to allow a jury to roundly reject its asserted justifications for terminating Mr. Fox as pretextual.

*Fourth,* the close temporal proximity between Mr. Fox's investigation and complaints of unpaid wages owed to employees at his new store — which he reviewed with District Manager Hutchinson in mid-November 2017 — and his termination on February 8, 2019 (approximately

10 weeks later) supports an inference of causation. *See e.g. Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010) ("Though this Court has not drawn a bright line defining, for the purposes of a prima facie case, the outer limits beyond which a temporal relationship is too attenuated to establish causation, we have previously held that five months is not too long to find the causal relationship."). As such, Mr. Fox can establish causation.

Summary judgment on Mr. Fox's retaliation claims under the FLSA and NYLL based on his complaints about unpaid wages owed to employees in his store should therefore be denied.

## B. NYLL Retaliation Claim Based on Complaint About Ongoing Misuse of Pest Strips in Starbucks Stores

Summary judgment on Mr. Fox's retaliation claim under the NYLL based on his urgent complaint to Tina McDonald in January 2018 concerning the ongoing and dangerous use of hazardous Hot Shot pest strip pesticides within Starbucks stores should likewise be denied. Pls. *See* Pls. 56.1 ¶¶ 170-171.

Starbucks threshold argument – that it "knew of and tried to combat the alleged use of pest strips for years" before Fox's complaint to McDonald, and thus would have had no basis to have terminated Mr. Fox for agitating over the issue (Def.'s Mem. 11) – is utterly belied by the record. Despite being warned by Plaintiffs Shwiner and D'Auria on an almost continuous basis for a period of years about the recurrent placement of these prohibited pesticides in Starbucks stores throughout Manhattan, Starbucks never undertook an investigation to identify the managers responsible for acquiring and deploying these products in violation of Starbucks' purported policy. Pls. 56.1 ¶ 184. Starbucks also maintained no records memorializing or in any way tracking the dates, locations or other details that Plaintiffs Shwiner and D'Auria (or anyone else) reported to the Company. Pls. 56.1 ¶ 181. Starbucks likewise never disciplined any employee in connection with this practice – despite proof that store managers used Company

funds to acquire prohibited pesticides for use in their stores with their district manager's documented approval even *during* the pendency of this litigation. Pls. 56.1 ¶ 181. And, when threatened by the specter of publicity concerning these practices, Starbucks hired a spokesperson to lie to the public by providing false assurances that purported "experts" had reviewed the situation and confirmed that no one's health or safety was at risk in connection with the misuse of pesticides in its stores. Pls. 56.1 ¶¶ 183-188.

The totality of Starbucks' efforts to "combat" its employees' misuse of pesticides in stores consisted of periodically circulating emails (often at Plaintiff Shwiner and D'Auria's insistence) to reiterate to managers that the practice is ostensibly "prohibited." Pls. 56.1 ¶ 35. Although these feeble efforts did nothing to abate the consistent resort to these products, Starbucks never undertook further action to prevent or deter its employees from doing so. *Id.* Under these circumstances, Mr. Fox's urgent and alarming complaint to McDonald about the active danger posed to employees and customers, including children – and his expectation of immediate and meaningful corrective action – was thus very much contrary to Starbucks established condonation of these practices.

### i.    Fox Engaged in Protected Conduct

Starbucks also mistakenly argues that Mr. Fox did not engage in protected conduct by protesting the deployment of hazardous pesticides in a manner prohibited by their labeling and the law (Def.'s Mem. 12).  To establish a retaliation claim under NYLL Section 215, "[a]n employee complaint or other communication need not make explicit reference to any section or provision of this chapter to trigger the protections of this section." Labor Law §215(1)(a). Rather "[a]ll that is required is that the complaint to the employer be of a colorable violation of the statute" *Figura v North Country Janitorial, Inc.*, 53 Misc. 3d 881, 885, 37 N.Y.S.3d 697 (Sup Ct

Warren County 2016); *Weiss v. Kaufman*, 2010 NY Slip Op 33261[U], *2, 2010 N.Y. Misc. LEXIS 5699 (Sup Ct NY County 2010). Here, Mr. Fox's complaint falls squarely within the ambit of NYLL § 200, "which codifies the common-law duty of an owner or employer to provide employees with a safe place to work." *Jock v. Fien*, 80 N.Y.2d 965, 967 (1992).

The deployment of Hot Shot no pest strips, among other complained of pesticides, in Starbucks stores was both unsafe and also, itself, illegal. Pls. 56.1 ¶ 167. As such, Mr. Fox's complaint to McDonald constituted protected conduct under NYLL Section 215. This conclusion is unaffected by Starbucks' assertion that McDonald did not perceive Mr. Fox's statements to her concerning the presence of illegal hazardous air borne pesticides in Starbucks' stores to be a "complaint." The reasonableness and plausibility of her asserted perception is for a jury, and cannot be resolved in Starbucks' favor on a motion for summary judgment.

### ii. Starbucks Had "Knowledge" of Mr. Fox's Protected Conduct

As noted above in connection with Mr. Fox's retaliation claim based on complaints about unpaid wages owed to employees at his store, general corporate knowledge is sufficient to establish this element of his prima facie case, provided that he addressed his complaint to a supervisor or employee whose job is to investigate and resolve such complaints. Here, Mr. Fox complained to Ms. McDonald in her capacity as Senior HR Compliance Specialist for Starbucks. It was also Ms. McDonald's *obligation* as a human resources manager to directly escalate complaints pertaining to safety matters. Pls. 56.1 ¶ 167.

### iii. Causal Connection and Pretext

Here, Mr. Fox can demonstrate that Starbucks' decision to terminate his employment was motivated, at least in part, by his complaint about the ongoing deployment of pesticides in Starbucks — and that Starbucks' alternative purportedly neutral justifications for his termination

are a mere pretext for retaliation — for much the same reasons as noted above in connection with Mr. Fox's retaliation claim based on his complaints about unpaid wages.

Namely, Starbucks has at different times claimed variously that Mr. Fox was terminated primarily due to quantifiable and incontrovertible paperwork errors, while at other times it has asserted that the primary basis for its termination decision was an inchoate, unquantifiable "perception" that he was somehow no longer "trustworthy." Pls. 56.1 ¶ 99. These shifting explanations preclude Starbucks' present attempt to characterize the basis for his actions against Mr. Fox as "undisputed" for purposes of summary judgment. This is particularly so given the degree of outright deception that dominates Starbucks' efforts to continue relying upon illegal, hazardous poisons that jeopardize the health and safety of anyone in its stores. As noted, Starbucks District Managers continue to approve disbursements of company funds to acquire these assertedly "prohibited" products for their stores. Pls. 56.1 ¶ 167. When caught, Starbucks falsely claimed that experts had investigated and could assure the public that no danger existed— when this was emphatically *not* the case; no experts had investigated or provided such assurances, and Starbucks fully intended (and has) continued in its same practices unabated. Pls. 56.1 ¶ 186-188.

In this context, the inherent implausibility in Starbucks attempt to smear Mr. Fox as "untrustworthy" – while failing to take meaningful corrective action to deter its managerial personnel from filling their stores with invisible odorless poison gas – raises issues of motive, credibility and intent that can only be resolved by a jury. Finally, the close temporal proximity between Mr. Fox's complaints – after sixteen years of award-winning performance – and Starbucks' sudden attainment of a new perception that he was untrustworthy and insubordinate, suggests a causal connection that is likewise for a jury to assess in the first instance.

Accordingly, Defendant's motion for summary judgment on Plaintiff Fox's retaliation claims should be denied.

## III. PLAINTIFFS D'AURIA AND SHWINER'S CLAIMS FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS MUST PROCEED TO TRIAL

A party alleging negligent infliction of emotional distress ("NIED") under New York law can recover for emotional injury resulting from a breach of a duty of care even if no physical injury occurs. *See De Sesto v. Slaine*, 171 F. Supp. 3d 194, 203 (S.D.N.Y. 2016) (citing *Taggart v. Costabile*, 131 A.D.3d 243, 255 (2nd Dep't 2015)). However, the emotional injury must be "a direct, rather than a consequential, result of the breach" and the "claim must possess some guarantee of genuineness." *Id.* For purposes of Plaintiffs Shwiner and D'Auria's NIED claims at issue here, the requisite "guarantee of genuineness" can be demonstrated if Starbucks's negligent breach of a duty to them "endangered [their] physical safety or caused the[m] to fear for [their] own physical safety." *Taggart*, 131 A.D.3d at 253 (internal quotations and citations omitted). As set forth below, Plaintiffs Shwiner and D'Auria's NIED claims easily satisfy these standards, and Starbucks's motion to dismiss for failure to state a claim should be denied.

### A. Starbucks Negligently Breached ts Duty of Care by Allowing Managerial Employees to Secretly Apply Hazardous Pesticides in an Illegal Manner in the Starbucks's Locations that Plaintiffs Shwiner and D'Auria were Assigned to Service

Starbucks mistakenly argues that it did not owe Plaintiffs Shwiner and D'Auria's any duty of care with respect to their involuntary exposure to toxic pesticides while performing the services that they were contracted to perform in Starbucks' stores – on the grounds that Plaintiffs Shwiner and D'Auria were purportedly contracted, in part, to search for and remove hazardous pesticides that Starbucks' employees purchased and placed in a hazardous and unlawful manner,

and in contravention of Plaintiffs repeated warnings and explanations of the health hazards and legal proscriptions against such mis-deployment (Def.'s Mem. 16).

The record evidence refutes this mischaracterization of the nature of services that Plaintiffs Shwiner and D'Auria were hired to perform. Such tasks are *not* detailed within their scope of work agreement with Starbucks or job descriptions with AVP. Pls. 56.1 ¶¶ 19, 180. When requested by one Starbucks District Manager to remove Hot Shot pest strips or other prohibited or unlawfully deployed pesticides that they found hidden in stores, Plaintiffs refused because it was not their job and they were unwilling to take custody of vaporizing pesticides that had been illegally deployed in a manner harmful to Starbucks employees and customers. Pls. 56.1 ¶¶ 36, 187.

The line of cases that Starbucks relies on for the proposition that Starbucks's duty of care did not extend to Mr. D'Auria and Ms. Shwiner's involuntary exposure to toxic chemicals that Starbucks itself hid in their workplaces — on the grounds that such exposure is purportedly "inherent" in the type of work that Plaintiffs were hired to perform (Def.'s Mem. 16) — likewise underscores precisely the opposite conclusion. For example, Starbucks cites *Kowalsky v. Conreco Co.*, 264 N.Y. 125, 128 (1934), for the proposition that: "An employee cannot recover for injuries received while doing an act to eliminate the cause of the injury." Yet, the "injury" that Mr. D'Auria and Ms. Shwiner were hired to eliminate was the presence of pests in Starbucks's stores. Pls. 56.1 ¶¶ 19, 180. Their involuntary exposure to hazardous pesticides that Starbucks systematically hid throughout its stores was not caused by their own actions to eliminate pests as they were hired to do. Instead, it was caused by Starbucks's interference with their efforts to provide Pest Control services by negligently and recklessly acquiring and placing

hazardous pesticides in stores in contravention of the urgent warnings that Mr. D'Auria and Ms. Shwiner repeatedly provided.

The other authorities on which Starbucks' mistakenly relies are likewise distinguishable from Mr. D'Auria and Ms. Shwiner's NIED claims at issue here for similar reasons. *See* Def.'s Mem. at 16-17 (citing cases). Unlike a plaintiff who slips on a piece of garbage that the plaintiff was hired to pick up, *see Rojas v. 1000 42nd St., LLC*, 72 N.Y.S.3d 568 (2d Dep't 2018), Mr. D'Auria and Ms. Shwiner were harmed by Starbucks's negligent placement of poisons that Starbucks should never have self-deployed in its stores in the first instance. *See also Hansen v. Trs. of the Methodist Episcopal Church of Glen Cove*, 51 A.D.3d 725 (2d Dep't 2008) (dismissing negligence claim where plaintiff alleged injury caused by the rotting soffit that he was hired to remove); *Imtanios v. Goldman Sachs*, 843 N.Y.S.2d 569, 572 (1st Dep't 2007) (plaintiff's job as janitor "necessarily entailed walking near, or through, discarded computer parts" such as the part over which plaintiff slipped and fell).

 Mr. D'Auria and Ms. Shwiner were not hired to somehow police Starbucks's negligent and reckless disregard of their professional advice. The fact that Starbucks systematically misused toxic pesticides in its Manhattan stores does not bring its misconduct within the ambit of dangers that are ordinarily "inherent" in the provision of professional pest control services. Instead, it merely demonstrates that Starbucks's engaged in negligent conduct systematically, in breach of its duty to provide Mr. D'Auria and Ms. Shwiner with a safe place to work.

Finally, there is no merit to Starbucks assertion that it did not owe Mr. D'Auria and Ms. Shwiner a duty of care "from hazards resulting from the contractor's methods over which the owner exercises no supervisory control." Def.'s Mem. at 18-19 (citing *Anderson v. Bush Indus.*, 280 A.D.2d 949, 950 (4th Dep't 2001); *Comes v. N.Y. State Elec. & Gas Corp.*, 82 N.Y.2d 876,

878 (1993)). In particular, the "hazards" at issue here resulted solely from the misconduct of Starbucks' own management personnel, who acted in a manner directly contrary to Mr. D'Auria and Ms. Shwiner's almost continuous exhortations in the interest of public safety and compliance with legal prohibitions against the use of Hot Shots in occupied facilities and food establishments. Pls. 56.1 ¶¶ 164-168. As such, Starbucks' motion for summary judgment on the grounds that it did not owe Mr. D'Auria or Ms. Shwiner any duty of care to protect them from involuntarily and unexpectedly being forced to, *inter alia*: (i) inhale concentrated DDVP vapor emanating from stacks of hidden No Pest Strips (ii) be engulfed by toxic pesticides spewing from "bug bombs" placed in stores; and (iii) be sprayed in the face with toxic insecticides upon arriving at work Pls. 56.1 ¶¶ 164-179 – on the grounds that this was purportedly merely the manner in which, as pest control experts, they had somehow embraced as an ordinary and acceptable facet of their chosen profession is too outlandish to contemplate resolving as "undisputed" in Starbucks' favor on a motion for summary judgment.

**B.      Starbucks's Failure to Stem the Systematic Misuse of Pesticides by Store Personnel Was Surely "Negligent"**

Starbucks also mistakenly urges that even assuming, *arguendo*, that it owed Mr. D'Auria or Ms. Shwiner a duty of care, it did not breach that duty because it purportedly "took aggressive action to attempt to remove all pest strips, and ensure new ones would not be purchased or used in the future." Def.'s Mem. 19. As previously noted, Starbucks's systematic deployment of hazardous pesticides in Manhattan stores persisted unabated despite Ms. Shwiner and Mr. D'Auria's provision of written complaints and warnings to Starbucks Regional and/or District Managers on almost countless occasions from May 2016 through April 2018. Pls. 56.1 ¶¶ 164-168. Despite these warnings, Starbucks never undertook an investigation to identify the

managers responsible for acquiring and deploying these products in violation of Starbucks' purported policy. Pls. 56.1 ¶ 181.

Starbucks also maintained no records memorializing or in any way tracking the dates, locations or other details that Ms. Shwiner and Mr. D'Auria (or anyone else) reported to the Company. Pls. 56.1 ¶ 181. Starbucks likewise never disciplined any employee in connection with this practice (*id.*) – despite proof that store managers used Company funds to acquire prohibited pesticides for use in their stores with their district manager's documented approval even *during* the pendency of this litigation. Pls. 56.1 ¶ 182.

Despite all of this, Starbucks' chose to limit the totality of its efforts to purportedly "combat" its employees misuse of pesticides in stores to periodically circulating emails (often at Plaintiff Shwiner and D'Auria's insistence) merely "reminding" managers that this persistent, wide-spread practice is ostensibly prohibited. Pls. 56.1 ¶ 187. Yet the very same senior regional managers who circulated those rote warnings also conspired among themselves to make greater efforts to conceal their hazardous misconduct. Pls. 56.1 ¶ 188.

Whether Starbucks's conduct in this regard constituted reasonable and sufficient care to provide Mr. D'Auria and Ms. Shwiner with a safe workplace — so as to absolve Starbucks of liability for the emotional distress resulting from their repeated involtory exposure to DDVP and other toxic pesticides while working in Manhattan stores — is quintessentially a question of fact that cannot possibly be resolved in Starbucks favor on a motion for summary judgment. Starbucks's motion should therefore be denied.

## C. D'Auria and Shwiner's NIED Claim Demonstrates the Requisite "Guarantee of Genuineness"

As previously noted, the requisite "guarantee of genuineness" to establish Mr. D'Auria and Ms. Shwiner's NIED claims can be satisfied if Starbucks's conduct "endangered [their]

physical safety or caused the[m] to fear for [their] own physical safety." *Taggart*, 131 A.D.3d at 253 (internal quotations and citations omitted). The record evidence amply establishes these facts here. Mr. D'Auria and Shwiner were repeatedly exposed to hazardous toxins that the government and scientific authorities have expressly identified as toxic and potentially fatal. Pls. 56.1 ¶¶ 156-162, 164-168, Ms. Shwiner and Mr. D'Auria also each suffered significant fear, anxiety and emotional distress due to Starbucks' callous indifference placing their health and safety in jeopardy. Pls. 56.1 ¶¶ 174-179, 189-191.

Starbucks' argument that the evidence indisputably demonstrates Mr. D'Auria and Ms. Shwiner were *not* in genuine "fear" for their "physical safety" and were *not* "in fact exposed to these toxins" while working in Starbucks, should therefore be readily rejected as utterly irreconcilable with the record (or, at the very least, as subject to vigorous material dispute). This is particularly true given that the Court must assume Plaintiffs' allegations to be true and construe all reasonable inferences in their favor in the context of Starbucks' summary judgment motion. Starbucks' motion should therefore be denied.

## **CONCLUSION**

For the forgoing reasons, Plaintiffs respectfully request that Defendant's motion for summary judgment be denied in all respects.

Dated: New York, New York
      March 1, 2021

Respectfully submitted,

FILOSA GRAFF LLP

By: _Ariel Graff_ (signature)
      Ariel Y. Graff
      Gregory N. Filosa

111 John Street, Suite 2510
New York, NY 10038
Tel: (212) 203-3473
agraff@filosagraff.com
