UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RAFAEL FOX, PAUL D'AURIA and JILL SHWINER,<br><br>                    Plaintiffs,<br><br>            -against-<br><br>STARBUCKS CORPORATION d/b/a STARBUCKS COFFEE COMPANY,<br><br>                    Defendant. | Case No. 19 Civ. 4650 (AJN)<br><br>**DECLARATION OF TINA MCDONALD IN SUPPORT OF DEFENDANT'S MOTION FOR <u>SUMMARY JUDGMENT</u>** |

TINA MCDONALD, does hereby swear, affirm and attest under the penalties of perjury as follows:

1.      I am Partner Resources Manager at Starbucks Corp. ("Starbucks"), the Defendant in the above-captioned case. I submit this reply declaration in support of Defendant's Motion for Summary Judgment seeking to dismiss the Complaint of Plaintiffs Rafael Fox ("Fox"), Paul D'Auria ("D'Auria") and Jill Shwiner ("Shwiner") (collectively, "Plaintiffs"). The facts and circumstances set forth herein are based on my personal knowledge or on the books and records of Starbucks.

2.      Before taking the position of Partner Resources Manager, I was a labor compliance specialist for the New York Metro region, approximately from November 2017 to November 2018, responsible for supporting and monitoring compliance with New York City's Fair Workweek legislation that came into effect in November 2017. (*See* November 24, 2017 email re New York Scheduling Legislation Goes Live Today attached as <u>Exhibit A</u>) Compliance specialists are not human resources managers, which Starbucks calls Partner Resources

Managers, and do not have general human resources responsibility. I did not hold the Partner Resources Manager role at any time during Plaintiff Rafael Fox's employment at Starbucks.

3. Even before the Fair Workweek law was passed, it was Starbucks' policy that schedules had to be posted three weeks in advance of a given workweek. (*See* Exhibit A at DEF0003656 (noting "Starbucks standard exceeds this [two week] requirement")) Fair Workweek made Starbucks' pre-existing practice a legal requirement; if schedules are not posted with two weeks' notice, an employer owes impacted employees predictability pay. (*See* Exhibit A at DEF0003652; New York Scheduling Rules (attachment to November 24, 2017 email), attached as Exhibit B, at DEF0003656)

4. Relatedly, if a posted schedule is changed with less than two weeks' notice, the employer owes impacted employees predictability pay (absent certain exceptions). Additionally, an employee may decline to work additional hours not included in the original schedule provided. If, however, an employee agrees to work the additional hours prompted by the schedule change, Fair Workweek legislation requires an employer to obtain the employee's written consent. (*See* Exhibit A at DEF0003652-3653; Exhibit B at DEF0003657; N.Y.C. Admin. Code § 20-1221 https://www1.nyc.gov/assets/dca/downloads/pdf/about/FairWorkweek-LawRules.pdf)

5. Changes to schedules initiated by an employee, however, do not trigger predictability pay obligations. It is Starbucks' policy that employees requesting a schedule change with less than two weeks' notice must document the request themselves by completing the Schedule Change Log. (*See* Exhibit A at DEF0003653)

6. Given the significance of timing and the circumstances prompting a schedule change, an employee's written confirmation is both needed as a matter of law and practical

necessity to determine whether an employee consented to work a given shift and whether Starbucks owes an employee predictability pay (and, if so, how much).  To that end, for New York City stores subject to Fair Workweek legislation, Starbucks created the Schedule Change Log (also referenced as a time edit log)  to comply with its obligations, including capturing mandatory written consent from the employee when there is a deviation from posted schedules.  (*See* Schedule Change Log – New York City Stores Only (attachment to November 24, 2017 email), attached as Exhibit C, at DEF0003655)

7. All schedule changes with less than two weeks' notice must be documented in the Schedule Change Log, including the reason for the change, the employee's signature to confirm consent, and the supervisor's approval.  (*See* Exhibit A at DEF0003653; Exhibit C)

8. The Schedule Change Log is not the same thing as the Punch Communication Log.  (*See* February 21, 2018 email re Scheduling Compliance Updated, and attachment thereto, attached as Exhibit D, at DEF0000551 ("Schedule Change Log ... Not a Substitution for Punch Communication Log"); February 20, 2018 email re Fair Workweek Meeting Recap, attached as Exhibit E, at DEF0000572 ("Partners should utilize the Schedule Change Log if they are late for example but not if they failed to punch.  Failure to punch should be documented in the Punch Communication Log."))

9. The Punch Communication Log has long been a part of Starbucks' procedures; it has nothing to do with and existed well before New York City's Fair Workweek legislation.  (*See* Excerpt of 2006 Partner Resources Manual, Hours of Work policy, attached as Exhibit F, at pp. 5, 7-8)  The Punch Communication Log captures information related to hours an employee worked and/or took leave from work, such as recording or correcting punch in and punch out time, sick and vacation time, and meal breaks.  (*See* Copy of Starbucks' 2018 Punch

Communication Log, attached as <u>Exhibit G</u>)  For non-exempt employees, time worked equals time paid; this document facilitates the execution of that policy and compliance with federal and state wage and hour laws.

10. I have reviewed Exhibit 44 attached to the Declaration of Ari Graff in support of Plaintiffs' Opposition to Defendant's Motion for Summary Judgment, which purports to be a document pertaining to the Punch Communication Log within the Starbucks Daily Records Book.

11. Exhibit 44 appears to be an excerpt of a longer document, the page is not dated, and it is not clear what document this page is a part of and whether the document and page were applicable around the time the Fair Workweek legislation came into effect in November 2017 and/or when I conducted an investigation into Plaintiff Rafael Fox's store in January 2018 in response to an employee's complaint about Mr. Fox filed with the New York City Department of Consumer Affairs.

12. Regardless, this document pertains to the Punch Communication Log used companywide and is irrelevant to Mr. Fox's conduct with respect to the Fair Workweek-specific Schedule Change Log that I and then-Regional Director Carla Ruffin independently encountered and found problematic, as I testified in more detail at my August 27, 2020 deposition.

13. In sum, at least at the time I investigated Mr. Fox's store, New York City's Fair Workweek law and Starbucks policy did not allow Mr. Fox to fill in the Schedule Change Log and/or sign on an employee's behalf.

14. I have also reviewed Exhibit 36 attached to the Declaration of Ari Graff, in which Mr. Fox claims former "Human Resources Manager" (Starbucks does not use that term

and instead calls such personnel "Partner Resources Manager") Brad Jennison authorized Mr. Fox to hire an external candidate on November 27, 2017.

15. I had become a labor compliance specialist only as of November 20, 2017, and I did not know Mr. Fox at the time.

16. I do not know what Mr. Fox is referencing with respect to a November 27, 2017 external hire; I am unaware of any such hire. Also, I have no knowledge whether Mr. Jennison gave Mr. Fox approval for any hire as this was not brought to my attention.

17. The November 27, 2017 external hire was not part of my January 2018 investigation into Mr. Fox's store and I did not make any findings about it.

Pursuant to 28 U.S.C. § 1746, I verify under penalty of perjury, under the laws of the United States of America, that the foregoing is true and correct.

Executed on March 29, 2021

_____
Tina McDonald